HERRINGTON *v.* STATE.

(Division B.   Feb. 1, 1937.)

[172 So. 129.   No. 32540½.]

**W. T. Weir**, of Philadelphia, for appellant.

**Webb M. Mize**, Assistant Attorney-General, for the State.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant was indicted in the Neshoba county circuit court of the crime of assault and battery, with intent to kill and murder Roy Gipson, was there convicted of simple assault, sentenced to pay a fine of one hundred dollars and to serve sixty days in the county jail, and from this conviction he appeals here.

It appears that the prosecuting witness, Roy Gipson, accompanied by a lady, went to a place known as Riverside Camp, and while in a restaurant, some one took the shift keys of his car, rendering him unable to move or operate it. He became angry and had a good deal to say about the person who took his keys. Odell Herrington, appellant, who was present, stated that if Gipson would carry him to a place called "Busted Knuckle," he would get his keys. Two boys in a truck offered to take them to this place, and when they arrived there, in which place there seems to have been a pool room and beer joint, Herrington went into the building and returned presently with the keys, giving them to Gipson, who identified them as his. Gipson insisted that Herrington had agreed to show him the person who took the keys, stating that he could whip whoever did take them, while Herrington stated that he only agreed to get the keys, and did not agree to point out the person who had taken them. It is shown that Herrington said he would take it on himself, asking Gipson, "What are you going to do about it?" Whereupon Gipson struck him with his fist knocking him against the fender of a car.

There is conflict in the testimony as to how many times Gipson struck Herrington, and whether he was "fixing" to strike him again. There is testimony to the effect that when Herrington came up from the fender, while Gipson was apparently intending to strike him again, Herrington struck what is termed a left-handed blow cutting Gipson on the breast. Gipson turned to his brother, who was standing nearby, and stated that Herrington had cut him, and that the brother started toward Herrington, who then ran.

There were some witnesses who testified that Gipson struck Herrington twice and was preparing to strike him again when he was cut, and others who testified that Gipson had struck Herrington only once and did not

have his hand in a striking position when he was cut. Gipson, himself, testified that when Herrington stated he was responsible, he threw out his breast; that Gipson struck him, and suspected he had his fist drawn to strike again when Herrington cut him, the wound being made with a knife, as he expected to have a tough time with Herrington. Gipson stated that he weighed one hundred ninety-five pounds; he supposed Herrington weighed one hundred eighty-five pounds, and he thought Herrington had more experience in fighting than he (Gipson) had.

The appellant, Odell Herrington, testified that while at Riverside camp, a boy about fifteen years old took Gipson's keys and left, stating he was going to "Busted Knuckle;" that he declined to give Gipson the name of the person who took the keys, whereupon Gipson cursed, and when Herrington said if he would take him to "Busted Knuckle" he would get the keys, Gipson said if he could get the keys there, he could get them at Riverside, and when Herrington gave him the keys, Gipson used a vile epithet, stating that he would whip whoever did it, and asked Herrington who it was, and that Herrington said he would take it on himself. That Gipson then struck him, knocking him down, and when he arose Gipson struck him again, and was preparing, apparently, to strike once more, when Herrington cut him with a knife.

As stated above, the witnesses, of whom there were several, disagreed as to the number of times Gipson struck Herrington, and whether he was in a position to strike him once more when he was cut by Herrington. In this condition of the testimony, the court, for the state, gave the following instruction: "The court further instructs the jury for the State that if you believe, from the evidence, beyond reasonable doubt, that the defendant, Odell Herrington, armed himself with a deadly weapon, to-wit; a knife, and provoked a difficulty with Roy Gipson, and was the aggressor in said difficulty, and

so engaged in said difficulty in which Roy Gipson was cut and wounded, then Odell Herrington cannot plead self defense.''

It seems to have been the view of the district attorney and the court below that Herrington was the aggressor by stating to Gipson that he would take it upon himself, and asking Gipson what he was going to do about it.

Under the common law, mere words do not constitute assault, and a person was not the aggressor merely because of epithets used toward another, but the statutes in this state (Code 1930, sec. 1282) provide that words which by their ordinary acceptation and meaning are considered insulting, and calculated to lead to a breach of the peace, may be given in evidence as justifying assault.

Under neither statute, nor common law, did Herrington's statements constitute assault, and did not make him the aggressor in the difficulty, and the language used, that he would take it on himself, was not such as would be insulting and calculated to lead to a breach of the peace.

Furthermore, the quoted instruction is not technically correct, in that it omits the element that the knife was procured for the purpose of being used in the difficulty, and the hypothesis stated in the instruction cuts off the right of self-defense.

This court has often warned against the giving of instructions cutting off the right of self-defense, and the giving of this instruction supra was error.

It may be that Herrington used excessive force, or unnecessarily used a weapon in the fight, and he may be guilty of assault because thereof. This, however, was a question for the consideration of the jury under proper instructions.

The appellant requested a peremptory instruction, but, under the facts, we do not think he was entitled

thereto. As stated, it was a question for the jury to determine from all the facts.

For the giving of the quoted instruction cutting off the right of self-defense, the judgment must be reversed and the cause remanded for a new trial.

Reervsed and remanded.