571 So.2d 961 (1990)
Dolores ANDERSON
v.
STATE of Mississippi.
No. 89-KA-0634.
Supreme Court of Mississippi.
December 5, 1990.
Jannie M. Lewis, Lexington, for appellant.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case presents the question whether, in a prosecution for aggravated assault, the evidence was such that the defendant was entitled to have the defense of self-defense submitted to the jury. We find that there was an evidentiary predicate upon which the jury may have vindicated the *962 defendant on the ground tendered. Because the trial court refused to instruct the jury to this effect, we reverse and remand for a new trial.

II.

A.
For reasons not altogether clear, Delores Brown and Dolores Anderson, both of Holmes County, Mississippi, had in various ways manifested hostilities one to the other over a period of time, until the early morning hours of September 24, 1988, when Anderson slashed Brown with a knife or box cutter, leaving Brown bleeding profusely and ultimately requiring 42 stitches at the hospital. It seems that Brown, age 33, and her sister, Pamela, had been out for the evening and some while earlier had encountered Anderson, who was riding in a truck driven by her cousin, Craig Anderson, and a friend named Otha B. Gibson. The two groups had encountered each other several times earlier in the evening, and Brown said the Anderson truck had been following her.
In any event, it is uncontradicted that Brown drove her sister Pamela to their mother's house in Pickens, Mississippi. By design or fortuity, the Anderson truck soon appeared and found Brown and her sister standing in the driveway. Who said what to whom is unclear, but we do know that Pamela Brown approached the Anderson truck which had stopped in the street and that Delores Brown came up a few moments later. A substantial disputation ensued, during the course of which Dolores Anderson reached out through the truck window and slashed Brown across the neck. The Anderson truck then drove off, its occupants laughing.

B.
On April 7, 1989, the Grand Jury of Holmes County returned an indictment charging Dolores Anderson with aggravated assault, Miss. Code Ann. § 97-3-7(2) (Supp. 1988). On May 1, 1989, the case was called for trial in the Circuit Court of Holmes County, and from the outset Anderson argued and sought to prove self-defense. In the end, the jury was unconvinced and returned a verdict finding Anderson guilty as charged. The Circuit Court sentenced Anderson to ten years imprisonment with six years suspended and four years to serve.
Anderson moved for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial and in substantial part urged that the Circuit Court had erred in refusing to submit her defense of self-defense to the jury. The Circuit Court denied the motion on May 30, 1989, and this appeal has followed.

III.
Anderson does not challenge the judgment of conviction insofar as the sufficiency or weight of the evidence offered at trial may be concerned, nor could she. The evidence is more than substantial, whoever may have begun the bad blood between them, that on the early morning hours of September 24, Anderson did strike Brown with a knife or box cutter, deliberately and for the purpose of causing serious bodily injury to Brown, all under circumstances suggesting aggravated assault as the legislature has defined that offense. Miss. Code Ann. § 97-3-7(2) (Supp. 1988). Given our familiar standard, the judgment is beyond legal question on these grounds. See Nobles v. State, 464 So.2d 1151, 1155 (Miss. 1985).

IV.
What grieves Anderson is that the Circuit Court refused to give the jury a chance to pass on her claim of self-defense. We note procedurally that in opening statement Anderson's lawyer announced to the jury that she would show that Brown was the aggressor and that she, Anderson, had wholly acted in self-defense. At trial, Anderson said that earlier in the evening when she and her companions encountered Delores and Pamela Brown, Pamela said, "I been wanting a piece of you for a long time." Anderson and her group left and about three hours later they passed by the Browns' mother's house and saw Delores *963 and Pamela Brown parked in the driveway. Anderson says Delores Brown came up to the car and said, "Let's have a woman-to-woman talk and straighten this out," and then they started "yapping" and "all of a sudden they was up in the truck trying to get to me." Anderson said Delores Brown had an ice pick and that she, Anderson, sustained "a little cut right on my left top lip from the ice pick." Anderson admitted that she cut Delores Brown but insisted that she acted in self-defense after she had been stabbed with the ice pick. "I cut her because I was trying to keep her from getting to me." "They were striking at me ... I just struck back."
Delores Brown, the victim, admitted that she carried an ice pick in her car. She admitted also that, when the Anderson truck drove up, she got the ice pick from her car and carried it with her as she approached the truck. Brown denies stabbing Dolores Anderson with the ice pick. However, the ice pick wound up in the truck and, in point of fact, Dolores Anderson delivered it to Pickens Chief of Police Phillip Yarbrough, who confirmed that fact and corroborated that, when he saw Anderson a short while after the altercation, she had "a minor cut about a half inch or so long" on her face that she, Anderson, said had been received when Brown struck her with an ice pick. Brown's explanation of how the ice pick got into the Anderson truck was simply that "it was knocked out of my hand and fell over in the truck."
In this state of the matter, Anderson's counsel asked that the jury be instructed regarding her defense of self-defense. Requested Instruction No. D-1 outlined the elements of self-defense. Instructions D-4 and D-6 would, in effect, have advised the jury that it should acquit Anderson if it found she acted in necessary self-defense. The Circuit Court refused all three instructions, without comment.[1] The only reference to self-defense in any instruction actually given the jury is found in Instruction S-1, which told the jury of the nature and elements of the charge laid in the indictment, advising that before it could convict, the jury should find that Anderson was acting "not in necessary self-defense." Instruction S-3 is similar but used the phrase "without legal justification." The jury received no instruction which defined self-defense or set forth its elements. In final argument to the jury, Anderson's lawyer argued self-defense without objection from the prosecuting attorney.
Self-defense has long been recognized in our law as a defense to a prosecution for assault, or as it is today known, aggravated assault. See Jones v. State, 418 So.2d 832, 833 (Miss. 1982); Ferguson v. State, 242 So.2d 448, 450 (Miss. 1970); cf. Craft v. State, 202 Miss. 43, 30 So.2d 414, 416 (1947); Herrington v. State, 177 Miss. 837, 172 So. 129, 131 (1937); Smith v. State, 208 So.2d 746 (Miss. 1968). To make an assault justifiable on grounds of self-defense, danger to the defendant must be either actual, present and urgent, or defendant must have reasonable grounds to apprehend design on the part of the victim to kill, or to do him some great bodily harm, and, in addition, there must be immiment danger of such design being accomplished. Jones, 418 So.2d at 833; cf. Burge v. State, 472 So.2d 392, 395 (Miss. 1985); Cook v. State, 467 So.2d 203, 207 (Miss. 1985); Haynes v. State, 451 So.2d 227, 228 (Miss. 1984). On the other hand, if a person provokes a difficulty, arming himself in advance, and intending, if necessary, to use his weapon and overcome his adversary, he becomes the aggressor and deprives himself of the right of self-defense. Parker v. State, 401 So.2d 1282, 1286 (Miss. 1981).
*964 Ordinarily a defendant is entitled to have the jury instructed on his theory of the case. Murphy v. State, 566 So.2d 1201 (Miss. 1990). Sayles v. State, 552 So.2d 1383, 1390 (Miss. 1989). Young v. State, 451 So.2d 208, 210 (Miss. 1984). This certainly is so where the defense is self-defense. Fleshing out this general premise, whether the self-defense issue  or any other issue of fact  should be submitted to the jury ultimately turns on whether there is in the record credible evidence supporting it. Where a party offers evidence sufficient that a rational jury might find for him on the particular issue, that party of right is entitled to have the court instruct the jury on that issue and through this means submit the issue to the jury for its decision. King v. State, 530 So.2d 1356, 1359 (Miss. 1988); Armstead v. State, 503 So.2d 281, 285 (Miss. 1987). The instruction may be denied only if the trial court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences that may be drawn from the evidence in favor of the accused, that no hypothetical reasonable jury could find the fact as the accused suggests. See King, 530 So.2d at 1359; Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985). Our question then becomes whether there is sufficient evidence in the record that a rational jury might have found for Anderson on the self-defense issue.
We think the answer in the affirmative. Without contradiction, when the Anderson truck pulled up in front of Brown's mother's residence, Brown went to her car and got her ice pick, which she said she carried for self-protection. Brown approached the truck with the ice pick and, according to Anderson and Gibson, wielded it in an attacking fashion and actually struck Anderson, who says she only struck back in defense of herself. Brown's ice pick is as deadly a weapon as Anderson's knife or box cutter. The fact that the ice pick was found in the Anderson truck strongly suggests Brown dropped it or had it knocked from her hand in the course of striking at Anderson and her companions.
The fact that Anderson was entitled to have the issue of self-defense submitted to the jury does not mean that any instruction would do. She was required to request an instruction in proper form. See, e.g., Flowers v. State, 473 So.2d 164, 166 (Miss. 1985). The Circuit Court, of course, had the duty to make reasonable modifications of the requested instruction or, at the very least, to point out to Anderson wherein it may have been deficient and allow reasonable opportunity for correction. See Mease v. State, 539 So.2d 1324, 1335 (Miss. 1989); Harper v. State, 478 So.2d 1017, 1022-23 (Miss. 1985); Thomas v. State, 278 So.2d 469, 472-73 (Miss. 1973). Nothing said here should be taken as approving the form of Instruction D-1 as it was requested. The record below, however, contains no objection by the prosecuting attorney to the form of the instruction, nor does the state on appeal argue that Anderson's self-defense instructions were in improper form or that they somehow were incorrect statements of the law. At all times it appears that the prosecution has confined itself to objecting to the issue of self-defense being submitted to the jury at all.
On appeal the prosecution argues that Anderson was nevertheless allowed to argue self-defense to the jury and that she was, in fact, better off because she was not cabined by the strictures of any particular jury instruction. The point is without merit. Our law is settled that, where a party is entitled to have an issue submitted to the jury through viable instructions from the court, and where the instruction is denied, the error is not cured by the fact that the lawyer is allowed to nevertheless argue the point.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] We are concerned that nothing in the record informs us exactly why the Circuit Court refused to submit self-defense to the jury. Anderson's principal instruction was No. D-1 with respect to which the record reflects that the Circuit Court merely announced, "I am going to refuse D-1." In the case of Instruction D-4 the Court simply said, "D-4 will be refused." In the case of D-6 the Court announced, "I am going to refuse D-6." Suffice it to say that it would be helpful if we had in the record statements from the trial judge reflecting his thinking in making such rulings, although these are points of law subject to de novo review.