**5/20/97**

# IN THE COURT OF APPEALS

# OF THE

# STATE OF MISSISSIPPI

# NO. 94-KA-00137 COA

**LARRY BOGAN**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. R. KENNETH COLEMAN

COURT FROM WHICH APPEALED: CHICKASAW COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

JIM WAIDE

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: SCOTT STUART

DISTRICT ATTORNEY: JERRY L. STALLINGS

NATURE OF THE CASE: CRIMINAL - SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER

TRIAL COURT DISPOSITION: ENTERED JUDGMENT OF GUILTY ON JURY VERDICT OF GUILTY AND SENTENCED APPELLANT TO SERVE FIVE YEARS IN AN INSTITUTION TO BE DESIGNATED BY THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS SUSPENDED UPON THE APPELLANT'S GOOD BEHAVIOR, LEAVING

TWO YEARS TO SERVE.

MOTION FOR REHEARING FILED:6/3/97

CERTIORARI FILED: 7/28/97

MANDATE ISSUED: 10/9/97

BEFORE THOMAS, P.J., COLEMAN, AND DIAZ, JJ.

COLEMAN, J., FOR THE COURT:

A jury in the Circuit Court of the Second Judicial District of Chickasaw County found the Appellant, Larry Bogan, guilty of simple assault on a law enforcement officer, James Myers, the Chief Deputy Sheriff of Chickasaw County. The circuit court then entered its judgment of Bogan's guilt of simple assault on a law enforcement officer in which judgment it sentenced Bogan to serve five years in an institution to be designated by the Mississippi Department of Corrections, with three years suspended upon the appellant's good behavior, leaving two years for Bogan to serve. Bogan appeals from that judgment to present four issues for this Court's review, analysis, and resolution. We resolve all four issues against Bogan and affirm the trial court's judgment and sentence.

## I. Facts

On November 13, 1992, several officers associated with the North Mississippi Narcotics Task Force (Task Force) were searching the home of Ms. Reo Bogan, mother of the Appellant, Larry Bogan, to recover a rifle which one of two subjects had aimed at two members of the Task Force. Ms. Bogan's home was located in the Richardson Hill community just south of the boundary between Chickasaw and Lee Counties. The two narcotics agents on whom the suspect pulled the rifle had requested assistance, or "back-up," in response to which officers from the Task Force and the Chickasaw County Sheriff's Department came to Ms. Bogan's home. Among the officers who responded to the request for assistance was Chickasaw County Chief Deputy Sheriff James Myers. These officers had arrested one of the subjects and placed him in an automobile, and proceeded to search for the other subject, who had run away after he had pointed the rifle at the two narcotics agents. About fifteen minutes later, the other subject was corralled, and the officers then began to search Ms. Bogan's home for the rifle.

Around 1:30 p.m. Larry Bogan left his place of employment, Glenn Acres Hair Care Products Company located in Shannon in Lee County, and drove to his mother's home for lunch. As he slowed to a stop near her home, he saw some fifteen or twenty officers in his mother's yard. He got out of his car and proceeded toward his mother's home. As Bogan walked toward his mother's home, Gabriel George, an agent with the Task Force, commanded him to stop. When Bogan continued walking toward the home, George, who later testified that the other officers and he were trying to protect the area as a crime scene, confronted Bogan by raising his left hand and repeating his command that Bogan stop. According to George, Bogan grabbed him by the upper arm and told him that "this was his house." George decided that he would arrest Bogan and put his right hand closer to Bogan's shoulder. Bogan responded with a kick, not necessarily at George. An altercation then erupted among Bogan, George, Chief Deputy Myers, and other officers. The officers threw Bogan onto a car

to place handcuffs on his arms which they were trying to pull behind his back, when Bogan bit Deputy Myers' finger with such force that it bled. A physician at the Okolona Hospital later gave Myers a tetanus shot.

## II. Trial

The grand jury indicted Bogan for simple assault on a law enforcement officer. During Bogan's trial four law enforcement officers, including Chief Deputy Myers and Agent George, testified to the foregoing events. All of them testified that Bogan used the "F" word before George proceeded to initiate Bogan's arrest; and Bogan's counsel endeavored to establish that in the course of arresting Bogan, some of the officers might have resorted to similar, if not identical, phraseology. We recite this aspect of the testimony because in one of his four issues, Bogan asserts that his use of the "F" word was protected by the First Amendment so that his uttering that word which now routinely assaults our sense of hearing via the entertainment media could not constitute probable cause for his arrest.

During his testimony, Bogan did not deny that he had bitten an officer during the brief brawl which occurred very near the front door of his mother's home and which ended with the officers' subduing him. As we noted, a jury of Bogan's peers returned a verdict of "Guilty of simple assault on a law enforcement officer," pursuant to which the trial judge sentenced Bogan to serve five years in an institution to be designated by the Mississippi Department of Corrections, with three years suspended upon the appellant's good behavior, leaving two years for Bogan to serve. The trial judge denied Bogan's motion for judgment of acquittal or new trial, and Bogan now appeals to present four issues for our review, analysis and resolution.

## III. Review, analysis, and resolution of Bogan's four issues

### A. Statement of the issues

We recite the issues as Bogan propounded them to us in his brief:

First Issue: The Court erred in refusing Instruction D-3. Instruction D-3 correctly told the jury that Bogan had the right to resist an unlawful arrest. This denied Bogan a fair trial in violation of U. S. Constitution Amendment Fourteen, since it failed to present his basic theory of defense to the jury. The failure to instruct on the necessity of probable cause to arrest violates U. S. Constitution Amendment Four.

Second Issue: The Court denied Bogan a fair trial, in violation of U. S. Constitution Amendment Fourteen, when it gave Instruction S-5 permitting Bogan to defend himself only if there was a danger of great bodily harm, or a design to kill and imminent danger of this design['s] being accomplished.

Third Issue: The Court violated U. S. Constitution Amendment One by refusing to instruct the jury that it is not unlawful to use mere words against the officers, and that using mere words was protected by the freedom of speech clause of the U. S. Constitution Amendment One.

Fourth Issue: The Court erred in refusing Instruction D-9A. This instruction correctly told the jury

that simple assault on a law officer is a felony and carries a penitentiary sentence. Failure to so instruct the jury denied Bogan a fair trial in violation of U. S. Constitution Amendments Six and Fourteen.

**B. Standard of Review**

In *Collins v. State*, No. 94-KA-00565, slip op. at 3 (Miss. Jan. 30, 1997) the supreme court enunciated the following standard of review for reviewing jury instructions:

This Court's standard of review in reviewing jury instructions is as follows:

In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.

(Citations omitted.)

As for the issue of whether the trial court erred when it refused to grant an instruction which a party requested, the Mississippi Supreme Court in *Willard v. Paracelsus Health Care Corp*., 681 So.2d 539, 543 (Miss. 1996) established the following standard of review:

[O]ur rule is this: [t]he refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper only if the trial court -- and this Court on appeal -- can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inference which may be drawn from the evidence in favor of the requesting party, that no hypothetical reasonable jury could find the facts in accordance with the theory of the requested instruction.

This Court also acknowledges that the Mississippi Supreme Court has established this standard of review which pertains to whether the jury instructions as a whole properly instruct the jury:

On appeal, this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed. Accordingly, defects in specific instructions do not require reversal where all instructions taken as a whole fairly--although not perfectly--announce the applicable primary rules of law. However, if those instructions do not fairly or adequately instruct the jury, this Court can and will reverse.

*Boone v. Wal-Mart Stores, Inc*., 680 So.2d 844, 845 (Miss. 1996). Because Bogan complains of jury instructions which he requested but which the trial judge refused, the *Willard* standard of review is the more precisely relevant in this case; but we remain aware of the general standards from *Collins* and *Boone* as we begin our review and resolution of these four issues.

**C. First Issue:** The Court erred in refusing Instruction D-3. Instruction D-3 correctly told the jury that Bogan had the right to resist an unlawful arrest. This denied Bogan a fair trial in violation of U. S. Constitution Amendment Fourteen, since it failed to present his basic theory of defense to the jury. The failure to instruct on the necessity of probable cause to arrest violates U. S. Constitution Amendment Four.

Instruction D-3 which Bogan requested read as follows:

The Court instructs the jury that law enforcement officers had no right to take Larry Bogan into custody or to make any attempt to apprehend him unless there was probable cause that he had committed some offense. If there was no probable cause that Larry Bogan had committed any offense, then Larry Bogan had the right to resist, in a reasonable fashion, any attempt to place him into custody.

Therefore, if you find that Larry Bogan, when he bit the officer, was merely making reasonable efforts to resist the officer's unlawful attempt to arrest him, then it will be your duty to return a verdict of not guilty.

We believe that the following quotations from Bogan's brief are a fair summary of his argument on this issue:

True enough, the officers testified that Bogan had provoked the incident by attempting to disobey their order to refrain form entering his home. However, the evidence from the defense witnesses was to the contrary. The defense witnesses testified that the officers jumped on Bogan when he was attempting merely to enter his home.

Under these conflicting facts, a jury issue was presented. It was not up to the judge to decide the true facts. Rather, when the facts were in conflict, it was the obligation of the trial judge to permit the jury to determine which version was true. if the version of Larry Bogan and his witnesses were true, Larry Bogan was doing nothing wrong, and was merely resisting an unlawful arrest. Thus, the fundamental error of the trial court was not permitting the jury to decide by instructing it as to the applicable law.

Section 97-35-7 of the Mississippi Code of 1972 provides in relevant part:

(1) Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:

. . .

(i) [a]ct or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor and, upon conviction thereof, such person or persons shall be punished by a fine of not more than five hundred dollars ($500.00) or imprisonment in the county jail for not more than six (6) months, or by both such fine and imprisonment.

Miss. Code Ann. 97-35-7 (Rev. 1994).

In *Merritt v. State*, 497 So.2d 811, 814 (Miss. 1986), the Mississippi Supreme Court cited Section 97-35-7 to support its opinion that "[d]isorderly conduct demonstrated by failure to obey the commands or requests of a law enforcement officer is a punishable offense in Mississippi."

Section 99-3-7 of the Mississippi Code of 1972 authorizes an officer to "arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence . . . ." Miss. Code Ann. 99-3-7 (Rev. 1994). In *Goforth v. City of Ridgeland*, 603 So. 2d 323, 326 (Miss. 1992), the Mississippi Supreme Court reiterated: "It is well settled that misdemeanors are breaches of the peace, and these rules empower officers to make arrests of persons who commit misdemeanors in their presence." From our review of all the foregoing statutes and opinions, we conclude that the State's evidence established that pursuant to Section 97-3-7 of the Mississippi Code of 1972, Agent Gabriel George was empowered to arrest Bogan because Bogan had committed the misdemeanor of "refrain[ing] from doing as ordered [not to enter the home of Bogan's mother] . . . to avoid any breach of the peace at or near the place of issuance of such order, in George's presence." The testimony of Chief Deputy Myers, Agent George, and the other two officers who testified for the State amply described a situation from which further breaches of the peace were quite possible.

This Court must review the evidence in the record to determine if Bogan's witnesses' testimony created an issue of fact about whether Agent George or another officer commanded Bogan not to enter his mother's house. *See White v. City of Philadelphia*, 19 So. 2d 493, 494 (1944) ("The burden of proof in a criminal case is on the defendant with regard to any independent, exculpatory fact."). The record contains this testimony from Bogan about the beginning of the affray between the officers and him:

Q. All right, so tell the jury what happened at that point, Larry, after you got there and saw the officers ten feet from your mother's house.

A. After I got out of my car and started up to the house, and one of the officers asked me, said, "Where in the hell are you going?" I told him, "Forget him. I'm at home." And I walked all the way up. I got a 1982 model truck. It's parked about five feet from my mother's door, and one of the officers grabbed me around my neck and threw me on the truck and started punching me in my side and twisting my leg and my body from one way to the other. Then in the confrontation where he hit me in my mouth and busted my lip, I guess that's how his hand got [in] my mouth, because I bit down on it; and then they threw me on the ground and handcuffed me.

Bogan never testified that Agent Gabriel George did not tell him to stop. Bogan did not deny that Agent Gabriel raised his hand to emphasize his command that he, Bogan, stop.

Indeed, Doris Cox, Bogan's sister, testified on Bogan's direct examination that the officers told her brother that he could not go into the house before the affray between Bogan and the officers began. We quote from the record:

Q. Tell the jury what you saw.

A. Larry come in like he come in every day, home for lunch; so Larry pulled up. He couldn't get in the yard. He parked right there in the road. When he got out of his car; and he got right even with the front end of his truck, they asked who was he and where was he going. He said, "I'm going in the house;" and they said, "Wait, wait. You can't go in there;" and they grabbed him. All of them just jumped on him and grabbed him and throwed [sic] him on the top of the truck.

Willie Blaylock, whom the officers had arrested before Bogan's arrival and placed in a police car with its windows rolled-up, testified about the altercation between Bogan and the officers, but he also testified that he could not hear what Bogan or the officers were saying because the windows of the police car in which he had been placed were closed. To summarize, Bogan elicited no testimony to contradict Agent George's testimony that he had ordered Bogan to stop.

In *Hearin-Miller Transporters, Inc., v. Currie*, 248 So.2d 451, 454 (Miss.1971), the Mississippi Supreme Court reiterated that "[w]hen the testimony of a witness is not contradicted, either by direct evidence or by circumstances, it must be taken as true." We must therefore take as true the testimony of Agent George that he had twice ordered Bogan to stop and had raised his hand to reenforce his command before contact occurred between them. We have already decided that these facts established that Agent George's arrest of Bogan was lawful.

In *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985), the Mississippi Supreme Court opined:

The only fact issues which should be taken from the jury are those with respect to which the evidence is so clear that rational jurors could not disagree. On all other material issues of fact, the jury must be instructed in the law so that they may perform their constitutional responsibility.

This Court invokes the *Willard* standard of review in the light of this quotation from *Harper*. This Court can say that taking the evidence of his unlawful arrest in the light most favorable to Bogan, who requested Instruction D-3, and considering all reasonable favorable inferences which we might draw from that evidence in Bogan's favor, "no hypothetical reasonable jury could find the facts [that Agent George did not twice order Bogan to stop] in accordance with the theory of the requested instruction[, which was that George had no probable cause to arrest Bogan]."

Bogan relies on *Boyd v. State*, 406 So. 2d 824 (Miss. 1981), which he argues is indistinguishable from the case *sub judice*. He asserts that "*Boyd* decided that there was a jury issue as to whether the arrest was unlawful, and, therefore, an instruction was required to permit the jury to determine whether the Defendant was resisting an unlawful arrest." The State counters this argument by contending that the supreme court in *Boyd* found that there was no jury issue because the State failed to offer any proof to show that there was probable cause or the existence of a warrant for arrest. In *Boyd*, the appellant, Billy Ray Boyd, was convicted of aggravated assault upon a Neshoba County Constable, Bennie Lee Adkins, who was attempting to arrest one Charles McBreath at McBreath's home in the Beashia Community in Neshoba County. *Id.* at 825. Boyd cut Constable Adkins' forearm with a pocket knife after the constable struck McBreath with a blackjack. *Id.*

The supreme court reversed Boyd's conviction of aggravated assault on the constable, a law enforcement officer, because it found that the record contained no evidence whatsoever that Constable Adkins' arrest was lawful. *Id.* at 826. The supreme court explained:

In the present case it is undisputed that Constable Adkins neither had possession of the warrant nor informed McBreath of the reason for his arrest. Nowhere in the record did the prosecution present any evidence to show that there was probable cause for arresting McBreath, and neither the affidavit nor the arrest warrant appears in the record. Therefore, so far as this record reveals, the arrest was unlawful.

*Id.* The issue in *Boyd* was not whether the jury could be instructed that the McBreath's arrest was unlawful, because, unlike the case *sub judice,* there was no evidence that the arrest was lawful. *Id.* Instead, the question was whether the trial judge erred when he failed to grant Boyd's requested instruction that "a person has a right to use reasonable force to resist an unlaw(ful) arrest, or to aid another in resisting an unlawful arrest. . . ." *Id.* The Mississippi Supreme Court held that the trial judge erred when he refused that instruction because the State had wholly failed to offer any evidence that Constable Adkins' arrest of McBreath was lawful. *Id.* at 827.

The key word to the resolution of this issue is "evidence." No person can resist a lawful arrest. Because the testimony of the State's witnesses established that Agent George was entitled lawfully to arrest Bogan and because Bogan offered no evidence to create an issue of fact about whether Agent George had ordered him to stop, which was the basis for his arrest of Bogan, there was nothing for the jury to decide. Because no hypothetical, reasonable jury could find from Bogan's evidence that Agent Gabriel George had not ordered Bogan to stop, the *Willard* standard of review requires that we decide this issue adversely to Bogan and affirm the trial judge's refusal to grant his requested Instruction D-3.

**D. Second Issue:** The Court denied Bogan a fair trial, in violation of U. S. Constitution Amendment Fourteen, when it gave Instruction S-5 permitting Bogan to defend himself only if there was a danger of great bodily harm, or a design to kill and imminent danger of this design['s] being accomplished.

**1. Bogan's argument to the trial judge on this issue**

The State requested Instruction S-5, which read as follows:

The Court instructs the jury that in order to make an assault justifiable on grounds of self-defense, danger to the defendant must be either actual, present and urgent, or defendant must have reasonable grounds to apprehend design on the part of the victim to kill, or to do him great bodily harm, and in addition, there must be imminent danger of such design being accomplished.

Bogan requested Instruction D-5A, which read as follows:

The Court instructs the jury that every person has the right to use reasonable means in his own self-defense.

If you find that, in this case, the officers had made an unprovoked attack upon Bogan, and at the time he was only acting in reasonable self-defense, then it will be your duty to return a verdict of not guilty.

During the conference on jury instructions, Bogan offered the following objection to Instruction S-5:

[F]irst, this instruction doesn't go with the facts of this case; and, second, it just states the part of the law of self-defense that's favorable to the State.

After additional discussion among the trial judge, the prosecutor, and Bogan's defense counsel, Bogan's counsel offered this observation:

This instruction, just using common sense, would have to be totally incredible to say in order to

defend yourself from assault, you have to believe the guy is about to kill you. In other words, if somebody comes up and starts beating you with his fists, I can't defend myself unless I believe he is about to kill me. That is just absolutely preposterous. If they have given that in some instruction like the facts of this case, it's got to be totally wrong.

Still later, Bogan's counsel contended:

My objection is [that] it doesn't fit the facts of this case because you could defend yourself in an assault by using reasonable force. The jury has to decide what's reasonable under all the circumstances. I could understand if it were a stabbing case. You couldn't stab somebody unless you feared great bodily harm. You couldn't shoot somebody.

The trial judge then announced that he would give both Instruction S-5 and Instruction D-5A.

## 2. Bogan's argument on appeal

In his brief, Bogan argues:

[Instruction S-5] told the jury that Bogan would have the right to utilize self-defense only if there was a design on the part of the officer to kill him or do him great bodily harm and there was imminent danger of such design being accomplished. This instruction is correct when applied to a case in which the defendant is charged with murder or aggravated assault, such that only an intent to kill him or do him great bodily harm would justify the extreme violence undertaken against his attacker.

Bogan then reminds this Court that he was not charged with murder or aggravated assault; that "all [he] did was to bite the officer's finger." Bogan's second ground for objection on appeal -- but not to the trial judge -- is that "it is impossible to read the instructions together" because "[t]hey contradict one another." He explains the contradiction as follows:

Instruction S-5 tells the jury that Bogan can defend himself from the officers' assault upon him only if he is in danger of great bodily harm or death. On the other hand, Instruction D-5A says he can use that force permitting self-defense, without a danger of great bodily harm or death.

The jury should not be put in the position of determining which instruction to believe.

## 3. Court's resolution of Bogan's second issue

Section 97-3-15 of the Mississippi Code of 1972 establishes self-defense as a defense to the crimes of murder and manslaughter as follows:

(1) The killing of a human being by the act, procurement, or omission of another shall be justifiable in the following cases:

. . . .

(f) When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished . . . .

Miss. Code Ann. 97-3-15. On the other hand, Section 97-3-7 of the Mississippi Code of 1972, which creates the felony of simple assault on a law enforcement officer, does not provide for self defense as a defense to either aggravated or simple assault.

We cite this statutory difference in the crimes involving homicide and those involving assault in response to Bogan's argument that Instruction S-5 is appropriate only to the former category of homicide and aggravated assault. It is true that Section 97-3-15 restricts self defense in crimes of homicide to those situations where there was a design on the part of the officer to kill him or do him great bodily harm and there was imminent danger of such design being accomplished. However, the Mississippi Supreme Court has repeatedly approved instructions defining self defense in prosecutions for aggravated assault which were quite similar, if not identical, to Instruction S-5.

In *Jones v. State*, 418 So. 2d 832, 833 (Miss. 1982), the appellant, Jerry Jones, argued that the trial judge erred when he granted State's Instruction 4, which read as follows:

The Court instructs the Jury that *to make an assault justifiable on the grounds of self defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill, or to do him some great bodily harm, and in addition to this, that there was imminent danger of such design being accomplished*; and, hence, mere fear, apprehension or belief, however sincerely entertained by one person that another designs to take his life or to do him some great bodily harm, will not justify the former making an assault on the latter party. A party may have an apprehension that his life is in danger and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the Jury may determine the reasonableness of the grounds upon which he acted.

(Emphasis added.) The Mississippi Supreme Court opined that while the above instruction was "not perfectly written," the trial judge did not err when he granted it because "similar instructions have been approved by this Court in many cases." *Id.* (citations omitted). The part of the foregoing Instruction 4 which we have printed in italics is more than a ninety percent verbatim quote of Instruction S-5 in the case *sub judice*.

In *Anderson v. State*, 571 So. 2d 961 (Miss. 1990), the Mississippi Supreme Court reiterated:

Self-defense has long been recognized in our law as a defense to a prosecution for assault, or as it is today known, aggravated assault. *See Jones v. State*, 418 So.2d 832, 833 (Miss. 1982); *Ferguson v. State*, 242 So.2d 448, 450 (Miss. 1970); *cf. Craft v. State*, 202 Miss. 43, 30 So.2d 414, 416 (1947); *Herrington v. State*, 177 Miss. 837, 172 So. 129, 131 (1937); *Smith v. State*, 208 So.2d 746 (Miss. 1968). *To make an assault justifiable on grounds of self-defense, danger to the defendant must be either actual, present and urgent, or defendant must have reasonable grounds to apprehend design on the part of the victim to kill, or to do him some great bodily harm, and, in addition, there must be imminent danger of such design being accomplished. Jones*, 418 So.2d at 833; *cf. Burge v. State*, 472 So.2d 392, 395 (Miss. 1985); *Cook v. State*, 467 So.2d 203, 207 (Miss. 1985); *Haynes. State*, 451 So.2d 227, 228 (Miss. 1984).

*Id.* at 963 (emphasis added). Again we have emphasized the criteria for the successful application of the defense of self defense in assault cases to indicate that it is an almost verbatim quotation of

Instruction S-5 in the case *sub judice*. Thus, we conclude that Instruction S-5 "fairly announced the law of the case (*See Collins*, slip op. at 3)," and that the trial judge did not err when he granted it.

As for Bogan's complaint that Instruction S-5 contradicted Instruction D-5A, we note that he did not raise this issue with the trial judge. To preserve for this Court's review an error based on the granting of a jury instruction, the litigant must state to the trial judge the ground on which he objects to the granting of the instruction. *Haddox v. State*, 636 So. 2d 1229, 1240 (Miss. 1994) (the assertion on appeal of grounds for an objection [to a jury instruction] which was not the assertion at trial is not an issue properly preserved on appeal.). Thus, we decline to review an issue not properly preserved on appeal.

Bogan cites two cases to support his proposition that "[o]ne can defend himself against an assault by using reasonable force": *Smith v. State*, 208 So. 2d 746 (Miss. 1968), and *Craft v. State*, 202 Miss. 43, 30 So. 2d 414 (1947). However, both of these cases involved an assault committed by the appellant in the course of resisting an arrest which the appellant maintained was unlawful. In both of these cases, the Mississippi Supreme Court found the arrests to have been unlawful, and it accordingly discharged both appellants. Thus, those two cases fail to support Bogan's assertion that "[o]ne can defend himself against an assault by using reasonable force." These two cases are relevant to unlawful-arrest issues, but this Court has already resolved Bogan's issue of unlawful arrest adversely to him because he adduced no evidence from which an issue of fact evolved about whether his arrest had been unlawful.

As summary of our review, analysis, and resolution of Bogan's second issue, we hold that Instruction S-5 was a correct statement of the law of self defense as the Mississippi Supreme Court has applied it in prosecutions for assault pursuant to Section 97-3-7 of the Mississippi Code of 1972. Because the matter of the purported contradiction between Instructions S-5 and D-5A was not properly preserved for appellate review, we decline to review it. Thus, this Court resolves this issue adversely to Bogan and affirms the trial judge's grant of Instruction S-5.

**E. Third Issue:** The Court violated U. S. Constitution Amendment One by refusing to instruct the jury that it is not unlawful to use mere words against the officers, and that using mere words was protected by the freedom of speech clause of the U. S. Constitution Amendment One.

The subject of Bogan's third issue is Instruction D-4A which he requested and which the trial judge refused. Instruction D-4A reads:

The Court instructs the jury that it is not unlawful to use mere words against the officers, even if the words are provocative.

Merely using words s protected by the freedom of speech clause of the United States Constitution Amendment One.

If you find that, in this case, the officers were attempting to arrest Bogan merely because he used inciting words or even curse words, then I charge you that this was an unlawful arrest.

During the conference on the instructions, Bogan's counsel argued to support the trial judge's grant of Instruction D-4A: "[Instruction D-4A] relates to the First Amendment. You can't arrest somebody

for merely using words. I tender that instruction." The State objected generally to it because "I don't believe that's the law;" and the trial judge responded, "I'll refuse th[is] instruction[] for your record . . . ."

On appeal, Bogan argues that "there was a basis in the evidence for a finding that Bogan was arrested because of his words against the officers," and that "a jury may well [have found] that the reason [he] was arrested was that he told the officers that this was his home and he was going to it." Then he adds:

Of course, a jury might also credit the officers' version and find that Bogan was arrested for profanity because he had used curse words, such as [the "F" word]."

In short, Bogan argues that the First Amendment protected his right to say "Fuck you" to the officers so that his use of that phrase could not constitute probable cause to arrest him. He cites *City of Houston v. Hill*, 482 U. S. 451 (1987), in which he argues that the United States Supreme Court held that "one has the right to use provocative words against an officer and cannot lawfully be arrested for doing so."

Bogan's argument on this issue ignores the principle that "[t]o be legal, the warrantless arrest does not have to have been on the charge ultimately brought." *Goforth v. City of Ridgeland*, 603 So. 2d 323, 326 (Miss. 1992). In *Jones v. State*, 461 So. 2d 686, 695 (Miss. 1984), the Mississippi Supreme Court explained:

For the arrest to have been lawful, it is not necessary that the information the officer had at the time of the arrest be sufficient to sustain a conviction of the crime charged.

(citation omitted). Consequently, whether it was unlawful for Agent George to arrest Bogan because he used the "F" word, we have already held that it was lawful for Agent George to arrest him for disorderly conduct. On the State's redirect examination, Gabriel repeated:

The reason Mr. Larry Bogan was arrested technically, the charge technically being disorderly conduct, he was refusing the order of a police officer to stop. Then when he initiated contact with me by grabbing my arm, put me into a defensive position, to either defend myself form a situation from Mr. Bogan, Mr. Larry Bogan, or allow him to go over me and enter the crime scene. He was simply arrested -- if it was my charges being filed, I would have filed charges for disorderly conduct. Whether or not Mr. Bogan was charged with that, I have no idea.

In *Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990), the Mississippi Supreme Court established the following criteria for determining whether an instruction ought to be given:

A defendant is entitled to have an instruction on his theory of the case. There is a limitation, however, because a trial judge may refuse an instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions.

To state the obvious, profanity is not an element of the felony of simple assault on a law enforcement officer. Thus, Instruction D-4A was totally irrelevant to the issue of Bogan's guilt of the felony for which he was being tried. As Bogan admits by his argument, the purpose of Instruction D-4A was to inject profanity as a probable cause for his arrest into the jury's deliberations of his guilt or innocence.

He intended to inject the issue of profanity as a probable cause for his arrest because he remained intent on relying on the defense that he used reasonable force to resist an unlawful arrest. Because the State's evidence established that Bogan's arrest was lawful, and because Bogan's evidence was insufficient to create an issue of fact on which it could be argued that his arrest was unlawful, Instruction D-4A incorrectly stated the law. This same instruction had no foundation in the evidence because Agent George testified that while Bogan was cussing and using the "F" word, he arrested him for disorderly conduct. Thus, it would have been error for the trial court to have granted Instruction D-4A. This Court resolves Bogan's third issue against him and holds that the trial judge did not err when he refused to grant Instruction D-4A which he had submitted and requested,

**F. Fourth Issue:** The Court erred in refusing Instruction D-9A. This instruction correctly told the jury that simple assault on a law officer is a felony and carries a penitentiary sentence. Failure to so instruct the jury denied Bogan a fair trial in violation of U. S. Constitution Amendments Six and Fourteen.

Instruction D-9A as submitted and requested by Bogan read as follows:

The Court instructs the jury that even though the crime is "simple assault upon a law officer, the offense is a felony and carries a penitentiary sentence."

Bogan cites but one case to support his position on this issue, *United States v. Datcher*, 830 F. Supp. 412, 415 (Tenn. M.D. 1993) in which that court opined:

When measured by this standard, a defendant's right to inform the jury of that information essential "to prevent oppression by the Government" is clearly of constitutional magnitude. That is, if community oversight of a criminal prosecution is the primary purpose of a jury trial, then to deny a jury information necessary to such oversight is to deny a defendant the full protection to be afforded by jury trial. Indeed, to deny a defendant the possibility of jury nullification would be to defeat the central purpose of the jury system.

Argument against allowing the jury to hear information that might lead to nullification evinces a fear that the jury might actually serve its primary purpose, that is, it evinces a fear that the community might in fact think a law unjust. The government, whose duty it is to seek justice and not merely conviction, *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935), should not shy away from having a jury know the full facts and law of a case. Argument equating jury nullification with anarchy misses the point that in our criminal justice system the law as stated by a judge is secondary to the justice as meted out by a jury of the defendant's peers. We have established the jury as the final arbiter of truth and justice in our criminal justice system; this court must grant the defendant's motion if the jury is to fulfill this duty.

This, however, is clearly not the law in Mississippi. In *Smith v. State*, 288 So. 2d 720, 722 (Miss. 1974), the Mississippi Supreme Court opined:

The sole duty of the jury was to pass on the guilt or innocence of the accused. The jury was not concerned in any way with the punishment to be meted out, and it was error to so instruct it as to what the sentence could be. The duty of sentencing the accused was that of the trial judge alone, uninfluenced by any consideration except that of meting out a fair and proper sentence under the

circumstances of the particular case.

In *Smith*, the trial judge had stated that he felt that "[T]he Jury expects me to sentence him to a term in the Penitentiary. *Id.* The trial judge apparently based his feeling on a sentence found at the bottom of the State's manslaughter instruction which read: "(In which event it will be the duty of the Court to sentence the defendant to a term of years in the state penitentiary.)" *Id.* The supreme court affirmed Smith's conviction but reversed the trial judge's sentence of five years to serve and remanded for re-sentencing. *Id.*

Bogan is as candid with this Court as he is incorrect when he writes in his brief:

While Bogan did bite the officer, a jury applying any degree of common sense would be apt to find it manifestly unjust to subject him to the penitentiary for such a trivial incident . . . . Had the jurors known that this seemingly minor event carried a penitentiary sentence, they would probably have had the good sense to return a verdict of not guilty.

*Smith* requires that we resolve Bogan's forth and last issue against him and hold that the trial judge did not err when he denied Instruction D-9A.

## IV. Summary

Consistent with the appropriate standards of review which we earlier quoted, the trial court did not err when it refused Instruction D-3 because Bogan and his other witnesses' testimony failed to create an issue of fact about whether Agent Gabriel George both ordered him twice to stop and raised his hand in a gesture to emphasize the seriousness of his command. The State's evidence established that George was empowered to arrest Bogan for refusing to obey an order to stop before he entered his mother's home and that therefore Bogan's arrest was lawful. Thus, this Court need not decide whether this issue, had the evidence created it, was one of law for the court to decide or one of fact for the jury's resolution.

Instruction S-5 was a correct statement of the law on self defense as the Mississippi Supreme Court has articulated it in earlier opinions in which it dealt with the issue of self-defense in prosecutions for assault. Because Bogan's counsel did not present the trial judge with the issue of whether Instruction S-5 contradicted Instruction D-5A, he did not preserve it for our review and resolution as a part of his appeal. Thus, we decline to consider it.

Instruction D-4A by which the trial court would have peremptorily instructed the jury that Bogan's arrest was unlawful if they found that the officers were attempting to arrest him merely because he was using "inciting words or even curse words" was properly refused because there was no evidence to support the proposition that Agent Gabriel George had arrested Bogan for that reason and because the instruction was on an issue not at all relevant to Bogan's guilt or innocence of the crime for which he was being tried.

The trial judge correctly denied Bogan's Instruction D-9A because in Mississippi the law is quite clear that in the absence of statutory authorization to fix the accused's sentence the jury is not to be concerned with the accused's punishment. We therefore affirm the trial court's judgement of Bogan's guilt of the felony of simple assault on a law enforcement officer and its sentence of Bogan to serve

five years in an institution to be designated by the Mississippi Department of Corrections, with three years suspended upon the appellant's good behavior, leaving two years for Bogan to serve.

**THE CHICKASAW COUNTY CIRCUIT COURT'S JUDGMENT OF THE APPELLANT'S GUILT OF THE FELONY OF SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER AND ITS SENTENCE OF THE APPELLANT TO SERVE FIVE YEARS IN AN INSTITUTION TO BE DESIGNATED BY THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS SUSPENDED UPON THE APPELLANT'S GOOD BEHAVIOR, LEAVING TWO YEARS FOR THE APPELLANT TO SERVE ARE AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT, LARRY BOGAN.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**