ISHEE, J.,
concurring in part and dissenting in part:
¶ 65. While I concur with the majority’s decision to affirm Shaw’s malicious-mischief conviction, I respectfully dissent from the decision to affirm Shaw’s conviction of aggravated assault. The majority finds that the evidence was sufficient for the jury to conclude that Shaw intended to inflict serious bodily harm on Killings-worth. I disagree. Accordingly, I would reverse and render Shaw’s conviction for aggravated assault.
¶ 66. In order for the evidence to be found sufficient to sustain a conviction, it must show “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this testy it is insufficient to support a conviction.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citing Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Mississippi Code Annotated section 97-3-7(2)(b) (Rev.2006) provides that “[a] person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” Shaw was charged with purposely or knowingly “biting a portion of Kill-ingsworth’s right ear off, a means likely to produce death or serious bodily harm.” The State was required to prove, beyond a reasonable doubt, that Shaw acted with either requisite mental state provided for in section 97-3-7(2)(b).
¶ 67. Shaw argues that the State did not put forth any evidence to support the “purposely or knowingly” elements of the charge of aggravated assault. Shaw asserts that it is reasonable that he bit Kill-ingsworth in an attempt to get Killings- *97 worth to release him and not to cause bodily injury. As such, Shaw argues that since he acted in self-defense without the intent to cause serious bodily harm, the evidence was insufficient to sustain his conviction of aggravated assault. I agree.
¶ 68. The State contends that Shaw’s intent to cause serious bodily injury can be inferred from testimony given regarding Shaw’s anger and antagonizing behavior towards Killingsworth. “Intent ordinarily must be inferred from the acts and conduct of the party and the facts and circumstances attending them.” Wales v. State, 73 So.3d 1113, 1121 (¶22) (Miss.2011) (citation omitted). Further, “even ‘slim’ evidence can be used to uphold a guilty verdict so long as it can reasonably be inferred to support such a finding.” Sanders v. State, 949 So.2d 92, 94 (¶ 5) (Miss.Ct.App.2006) (citation omitted).
¶ 69. The only testimony presented concerning the details of the bite to Kill-ingsworth’s ear was by Killingsworth. Killingsworth stated that while he had Shaw restrained beneath him, Gill began punching and kicking him in an attempt to help Shaw. Killingsworth testified that he turned to see who was attacking him and, when he turned his head back around after addressing Gill, Shaw bit his ear. Kill-ingsworth described the incident and stated, “[Shaw] had a tight grip on [the ear] so, I mean, I had to get him off ... [a]nd when he came off[,] [the ear] ripped down and that’s when [the ear] ripped off.” Kill-ingsworth’s testimony fails to prove that Shaw acted with either requisite mental state. Rather, his testimony only provides evidence that the loss of the ear occurred as a result of a struggle between the two men and that Shaw was acting in self-defense.
¶ 70. “Self-defense has long been recognized in our law as a defense to a prosecution for assault, or as it is today known, aggravated assault.” Anderson v. State, 571 So.2d 961, 963 (Miss.1990) (citations omitted).
To make an assault justifiable on grounds of self-defense, danger to the defendant must be either actual, present and urgent, or [the] defendant must have reasonable grounds to apprehend design on the part of the victim to kill, or to do him some great bodily harm, and, in addition, there must be imminent danger of such design being accomplished.
Id. Shaw and Killingsworth had been at odds the entire night. Killingsworth had confronted Shaw twice that evening, once in the kitchen, and later in the parking lot. While Killingsworth testified that, at all times, he informed Shaw that he did not want to fight, he continued to provoke Shaw. He testified that during the argument in the kitchen he did not back down from Shaw. He also stated that upon hearing that Shaw had damaged his car, he was prepared to get in his car to go find Shaw and approach him about the damage.
¶ 71. It is evident that Killingsworth was the initial aggressor and Shaw was in actual danger of harm. At the time of the incident, Killingsworth was twenty-four years old and Shaw was only nineteen years old. Killingsworth, weighing 240 pounds and measuring six feet in height, admitted that he was substantially larger and stronger than Shaw. Although there was testimony that Shaw also presented antagonizing behavior, the first physical contact made between the two men was when Killingsworth shoved Shaw in the parking lot. Shortly thereafter, Killings-worth pinned Shaw down and did not release him until the police officers arrived. At all times during the fight, Shaw was trapped beneath Killingsworth. The only opportunity Shaw had to get away from Killingsworth was when Killingsworth be *98 came distracted by Gill, and Shaw attempted to escape with a single bite to Killingsworth’s ear. Although Killings-worth suffered bodily injury, the evidence reflects that Shaw’s action of self-defense was not done with the intent to purposely or knowingly cause serious bodily injury.
¶ 72. While the evidence in this case may meet the elements necessary for simple assault, that charge was not presented to the jury. As such, the evidence must have been sufficient to meet the elements of aggravated assault. I believe that it was not. Therefore, I would reverse and render the jury’s guilty verdict and Shaw’s sentence on the aggravated-assault charge.
LEE, C.J., AND JAMES, J., JOIN THIS OPINION.