# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-01694-SCT

*YOLANDA BLOCKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/18/1999 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM ANDY SUMRALL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED- 3/07/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/28/2002 |

**BEFORE McRAE, P.J., EASLEY AND GRAVES, JJ.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Yolanda Blocker was convicted of one count of murder less than capital and one count of aggravated assault. She was sentenced to serve life, plus twenty (20) years to run concurrently. On appeal she alleges several errors by the trial court, namely, not granting a mistrial on a juror's misconduct, failing to instruct on "deliberate design," evidence was not sufficient to convict, and ruling certain evidence concerning a "crack house" to be inadmissible. We find the judge's failure to excuse the juror who read about the plea negotiations in the newspaper and also the judge's denial of a mistrial to be harmless error. Therefore, the judgment of the trial court is affirmed.

## FACTS

¶2. It is undisputed that on the night of August 12, 1997, Melissa Ledbetter and her aunt, Catherine Ledbetter, were on their way home after visiting Melissa's cousin, Estella, and her new baby. Riding in the backseat were four of Catherine's grandchildren. Not far from Estella's, shots were fired towards the car from behind. Jared Ledbetter, age nine , was killed when a bullet entered his head, and Jonathan Ledbetter, age eleven, was shot in the arm.

¶3. Acting on a tip, the police went to the residence of Curman G. (aka C.G.) Madden who agreed to a search of his house. Madden confessed to the shooting when an assault rifle was found in his possession. After spending a couple of days in jail, Madden told the police that he had only been the driver and that Yolanda Blocker, his ex-girlfriend, had been the shooter.

¶4. Blocker and Madden have different versions of the events surrounding the shooting which took place on the night of August 12, 1997, as Blocker denies any involvement.

### Madden's version

¶5. Blocker came to Madden's house about 2:30 a.m. on August 12, 1997. According to Madden, Blocker said that someone was shooting at her. She got Madden's rifle, and he drove her around to look for her assailants. Madden did not know for whom Blocker was looking, but he took her home after she was unsuccessful.

¶6. Per Blocker's instructions, Madden returned to her house around 10:00 p.m. He was driving his mother's black Nissan Sentra. Blocker, who was wearing black pants and a white t-shirt, ordered Madden to drive to his house when she realized he had not brought the rifle. He got his gun for Blocker, and after she checked the clip for bullets, he showed her how to close the chamber because she had never used his gun before. Sometime after 10:30 p.m. Blocker told Madden "to get up and come on."

¶7. Madden drove through the Lanier High School neighborhood several times before Blocker became excited - saying "there them bitches" and asking Madden to turn the car around. Blocker supposedly said "she was going to do the girl just like she had did her[]" then she leaned out the window and started shooting at the car in front of them.

¶8. The taillights of the victim's car were shot out, and the car was smoking. Upon being told that it looked like she had hit one of the passengers, Blocker expressed no remorse and said "[I] was trying to hit the tank and blow their ass up. . . ." Blocker and Madden then went to Taco Bell to get something to eat.

### Blocker's version

¶9. Blocker says she was at home with her father, mother, boyfriend and other family members when the shooting occurred. She testified that her mother knocked on her bedroom door about 12:30 a.m. and told her that C.G. wanted to see her. C.G. informed her that he had taken care of her business and asked her to ride to Flora with him. They drove to his mother's house in Flora and left a black car there in exchange for a brown one. Blocker was back at home in under an hour and a half. Madden never told Blocker that he had shot anyone, and she never saw a gun.

¶10. Blocker raises four issues:

**I. Whether the trial judge abused her judicial discretion in denying Blocker's request for a mistrial or in failing to excuse for cause a juror who, prior to trial on the second day thereof, disclosed that he had read a morning newspaper article about the case.**

**II. Whether the evidence, in its totality, was legally sufficient to sustain the verdict returned by the jury.**

**III. Whether the trial judge abused her judicial discretion in ruling, on her own motion, that certain evidence concerning a crack house was inadmissible.**

**IV. Whether the trial judge erred in failing to instruct the jury on the meaning of the term, "deliberate design."**

## DISCUSSION

**I. Whether the trial judge abused her judicial discretion in denying Blocker's request for a mistrial or in failing to excuse for cause a juror who, prior to trial on the second day thereof, disclosed that he had read a morning newspaper article about the case.**

¶11. Blocker contends that the trial court should have granted her request for a mistrial because it was erroneous to allow the juror who read the newspaper article, which contained a suggestion that plea bargaining had been initiated, to remain on the jury. The granting of a motion for a mistrial is within the sound discretion of the trial court. *Bass v. State*, 597 So.2d 182, 191 (Miss. 1992). Failure of a trial court to grant a mistrial will not be overturned on appeal without a showing that the judge abused his or her discretion. *Id*. Mississippi Rules of Evidence 410 governs the admissibility of evidence regarding plea discussions. We find that since the article's referred to a plea bargain, the trial court erred when she failed to excuse the tainted juror. It follows that the denial of Blocker's motion for a mistrial was errorroneous as well. However, we hold that these errors were harmless.

¶12. Mississippi has adopted Rule of Evidence 410, Inadmissibility of Pleas, Plea Discussions, and Related Statements, which provides that:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> (1) A plea of guilty which was later withdrawn;
>
> (2) A plea of nolo contendere;
>
> (3) Any statement made in the course of any proceedings under Mississippi statutory or rule of court provisions regarding either of the foregoing pleas; or
>
> (4) Any statement made in the course of plea discussions with an attorney for the prosecuting authority which does not result in a plea of guilty or which results in a plea of guilty later withdrawn.
>
> However, such a statement is admissible (1) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (2) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

¶13. We have declared that "a jury's verdict must be based upon the evidence and not affected by extraneous influences." *Fuselier v. State*, 468 So.2d 45, 57 (Miss. 1985). The newspaper's statement regarding ongoing plea negotiations is not specifically covered in the rule. However, it is clearly stated that no evidence relating to Blocker's failure to accept a plea bargain was in evidence, nor could it have rightfully been admitted into evidence. By allowing this "tainted" juror to hear the case after he had read about the possibility of plea negotiations, the judge effectively let information about the plea negotiations into evidence.

¶14. In *Brooks v. State*, 763 So.2d 859 (Miss. 2000), the prosecutor told the jury that the defendant had been offered a plea bargain and turned it down. The defendant was convicted, and this Court subsequently reversed stating that Miss.R.Evid. 410 does not allow any evidence of plea discussions. *Id.* at 863. This

Court has previously held that "if [the jurors] were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity." ***Collins v. State***, 99 Miss. 47, 54 So. 665, 665-66 (1911). *See also* ***Rucker v. State***, 248 Miss. 65, 158 So.2d 39, 42 (1963). In following the line of reasoning from ***Brooks***, the newspaper article "might reasonably have been understood by jurors as an assertion that guilt was, essentially, a foregone conclusion and that [Blocker] had, in effect, wasted the court's time by failing to plead guilty and by exercising [her] right to a trial by jury." ***Brooks***, 763 So.2d at 864. We find a significant distinction between the two cases in that the entire jury in ***Brooks***, rather than a single juror, was privy to the information.

¶15. A review of the transcript shows that the trial judge asked several leading questions pertaining to whether the jurors (specifically the one who read the article) could be impartial, but she never asked specific questions about the article. This is somewhat troubling because the piece did pertain to evidence of plea negotiations. The judge asked the juror prior to beginning the second day of trial if he could still "sit as an impartial and fair juror." He answered in the affirmative. The judge also instructed all jurors to ignore the newspaper articles and gave instructions as to which evidence they were to consider in making their decision. This Court has held that the jury is presumed to follow the instructions of the trial court. ***Crenshaw v. State***, 520 So.2d 131, 134 (Miss. 1988); ***McFee v. State***, 511 So.2d 130 (Miss. 1987). Also, Blocker's attorney did not ask any other questions pertaining to the juror's knowledge of the newspaper story or any inferences he may have drawn from it. Mindful of Miss.R.Evid. 410 and the holding in ***Brooks***, we pronounce the trial court's denial of a mistrial to be harmless error.

### II. Whether the evidence, in its totality, was legally sufficient to sustain the verdict returned by the jury.

¶16. When weighing the sufficiency of the evidence, the trial court must consider all of the evidence in the light most favorable to the State. ***May v. State***, 460 So.2d 778, 781 (Miss. 1984). The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. ***Id.*** If reasonable jurors could not have found beyond a reasonable doubt that the defendant was guilty, the conviction must be reversed. ***Id.*** Under the circumstances and from the testimony given in this case, jurors could have plausibly found Blocker guilty beyond a reasonable doubt. In other words, the evidence, in its totality, was legally sufficient to sustain the jury's verdict.

¶17. Blocker argues that because there was no physical evidence of her involvement in the crimes, only the testimony of Curman G. Madden, which besides being uncorroborated was impeached by his earlier confession and by eyewitness testimony, linked her to the events of August 12, 1997. The jurors also knew that Madden had yet to be sentenced when he testified. In Mississippi, uncorroborated accomplice testimony may be sufficient to convict in a murder case. ***Gandy v. State***, 438 So.2d 279, 285 (Miss. 1983) (citing ***Oates v. State***, 421 So.2d 1025 (Miss. 1982)). However, this Court has ruled that "the testimony of an accomplice must be viewed with 'great caution and suspicion. Where it is uncorroborated, it must also be reasonable, not improbable, self-contradictory or substantially impeached.'" ***Johns v. State***, 592 So.2d 86, 87 (Miss. 1991) (citing ***Jones v. State***, 368 So.2d 1265, 1267 (Miss. 1979)).

¶18. While it is true that Madden confessed to the crimes and later recanted when he placed the blame on Blocker, it is up to the jury to weigh any inconsistencies or contradictions in his testimony. ***Jones v. State***, 381 So.2d 983, 989 (Miss. 1980). The jury is also charged with the responsibility of balancing conflicting evidence. ***Winters v. State***, 449 So.2d 766, 771 (Miss. 1984). In this situation, several facts were put

before the jury that, if believed, would implicate Blocker in the fatal shooting. It is known that one of the alleged victims shot at Blocker the night before Jared and Jonathan Ledbetter were shot and that Blocker's parents were prepared to hide her out of town. An eyewitness declared that the shooter was wearing a white shirt of some type and that the shooter's hair was "slicked back." Blocker's father agreed with this description of Blocker on the night the crimes were committed. None of these facts seem particularly unreasonable. We have maintained that even where evidence is "slim," as long as it can reasonably be inferred to support a finding of guilt it will be upheld as true. *Rainer v. State*, 438 So.2d 290, 292 (Miss. 1983).

¶19. While Blocker does not agree with the verdict, her argument here fails. The jury was told by the trial court to consider the evidence and testimony "with great care, caution and suspicion." This Court finds that here a reasonable juror could have found Blocker guilty. The evidence, in its totality, was legally sufficient to sustain the verdict returned by the jury.

> **III. Whether the trial judge abused her judicial discretion in ruling, on her own motion, that certain evidence concerning a crack house was inadmissible.**

¶20. A trial court has great latitude in admission or exclusion of evidence where the question is one of materiality or relevancy, and its decision should only be reversed where this discretion is abused. *Eskridge v. State*, 765 So.2d 508, 510 (Miss. 2000). The Mississippi Rules of Evidence provide that a judge may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Miss. R. Evid. 403. Each side should be allowed to present any evidence showing their theory of the case and have the jury properly instructed as to that theory. *Manuel v. State*, 667 So.2d 590, 593 (Miss. 1995).

¶21. Blocker's attorney mentioned during opening statements that the Ledbetters were leaving a known crack house at the time of the shooting. After opening statements, the trial court ruled, sua sponte, that any evidence about the crack house would not be admissible. However, the judge did go on to say that she would consider allowing evidence regarding the crack house upon being shown the relevancy of such evidence.

¶22. Blocker now contends that evidence as to the crack house may have been enough to raise a presumption of reasonable doubt as to her involvement in the shootings. She also says that her Sixth Amendment guarantee of the right to compel witnesses to testify also includes the right to present her theory of defense. While we have upheld a defendant's right to present her theory of the case and have the jury instructed on it, there was no error here. *Manuel*, 667 So.2d at 593. The trial court was within her discretion in deciding to exclude this evidence. The crack house testimony, by itself, was probative of nothing. Had issues regarding the crack house been an integral part of Blocker's defense, all she had to do was make a proffer of what she intended to prove and how she intended to prove it. We have previously held that a trial court will not be reversed for limiting cross-examination where "no proffer was made of the testimony nor was a statement dictated into the record to indicate what was proposed to be shown by the examination." *McGee v. State*, 365 So.2d 302, 304 (Miss. 1978).

> **IV. Whether the trial judge erred in failing to instruct the jury on the meaning of the term, "deliberate design."**

¶23. It is well established that "[e]rror cannot be predicated on failure of the court to give instructions not

requested." *Lindsey Wagon Co.* v. *Nix*, 108 Miss. 814, 67 So. 459 (1915). Blocker did not ask for the jury to be instructed on either manslaughter or deliberate design. Therefore, this argument is without merit.

¶24. The main distinction between murder and manslaughter is the "presence of deliberation and malice in murder and its absence in manslaughter." *Carter v. State*, 199 Miss. 871, 879, 25 So.2d 470, 473 (1946). There is no question as to the presence of deliberation in this case. Blocker was shot at by Melissa Ledbetter (apparently the intended target of the August 12, 1997, crime) on the night of August 11, 1997. It was almost 24 hours later when Jared and Jonathan Ledbetter were shot. The violent acts which took place on August 12, 1997, constituted murder, not manslaughter. Blocker did not question this at the trial court level.

¶25. This Court has found that if a defendant is entitled to a manslaughter instruction, he is also entitled to one explaining deliberate design. *Williams v. State*, 729 So.2d 1181, 1184 (Miss. 1998). Here, giving of a manslaughter instruction was not warranted by the evidence. Blocker did not ask for such an instruction, and one was not given. Therefore, she was not automatically entitled to a deliberate design instruction. Also, the fact that Blocker did not ask, in writing, for a deliberate design instruction precludes her from being able to appeal based on the fact that such an instruction was not given to the jury. We uphold the jury instructions as given by the trial court.

## CONCLUSION

¶26. We do not treat a trial court's decision to deny a mistrial lightly. The granting of a motion for a mistrial is within the sound discretion of the trial court and will not be overturned without a showing of abuse of discretion. *Bass v. State*, 597 So.2d at 191. However, "a jury's verdict must be based upon the evidence and not affected by extraneous influences." *Fuselier v. State*, 468 So.2d at 57. Mississippi Rules of Evidence 410 governs the admissibility of evidence regarding plea discussions and should be treated as authority on this subject. Because of the newspaper article's reference to a plea bargain, the trial court judge erred when she failed to excuse the tainted juror. It follows that the denial of Blocker's motion for a mistrial was in error as well. However, we find these errors to be harmless and affirm the trial court's judgment.

¶27. **COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE TO TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I.**

**SMITH, P.J., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. PITTMAN, C.J., AND COBB, J., CONCUR IN RESULTS ONLY.**