ROBERTS, J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On November 2, 2004, a jury in the Washington County Circuit Court found Kelvin Sanders guilty of aggravated assault. Sanders was also indicted for armed robbery, but the jury was unable to reach a unanimous verdict on that charge. Sanders was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections on the aggravated assault charge. Shortly thereafter, Sanders filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied Sanders’s motion.
¶ 2. Aggrieved, Sanders now appeals to this Court asserting the following: (1) the trial court erred in refusing to grant his motion for a directed verdict, his request for a peremptory instruction and his motion for a JNOV, and (2) the trial court erred in denying his motion for a new trial as the verdict was against the overwhelming weight of the evidence.
FACTS
¶ 3. Prentiss McDowell, the victim in this case, who was a mechanic by trade, also worked as a manager of a club in Greenville called The Meeting Place. From his dealings with the club, McDowell identified Sanders, who was also known as “Bear,” as a regular patron of The Meeting Place. The morning of April 26, 2002, McDowell left the club around 2:00 a.m., carrying the nightly receipts, as well as a pistol for protection, and proceeded to visit a female friend that lived next door to the club. Obviously tired from the day’s work, McDowell testified that he “took a nap” for the next two hours and left his friend’s house around 4:00 a.m. After McDowell reached his car, he began to drive south on South Sixth Street towards Highway 82, *94 and, without warning, a truck pulled out of a vacant lot on McDowell’s left side and rammed McDowell’s car with enough force to rotate the vehicle 180 degrees, and leaving McDowell with a knot on his head and bleeding. Once his car stopped moving, McDowell heard gun fire and, fearing for his life, he exited the vehicle through the driver’s side window[1] and hid behind a nearby house. While behind the house, McDowell observed the truck that hit him, a maroon and grey S-10 Chevy truck that he knew Bear to drive, turning around in a parking space, driving down South Sixth Street, and turning right on Starling Street. Believing the incident was over, McDowell left the relative safety of his hiding spot and began talking to Willie Lee Byers, a witness to the incident who called the police shortly after the ramming occurred. Looking down Starling Street, McDowell saw Bear standing across Highway 1. At this point, McDowell returned to his car and began to collect his money, wallet, cigarette lighter, and other personal belongings that may have been jarred loose during the ramming. As he was bent over in the passenger side doorway, he was greeted by Bear with a M-16 assault rifle and the demands of “Don’t reach for your pistol” and “Don’t move.” At this point McDowell was robbed of his belongings and the club’s money.
DISCUSSION
I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT SANDERS’S MOTION FOR A DIRECTED VERDICT, HIS REQUEST FOR A PEREMPTORY INSTRUCTION AND HIS MOTION FOR A JNOV?
¶ 4. In his first issue, Sanders argues that the trial court erred in refusing to grant his motion for a directed verdict, his request for a peremptory instruction, and his motion for a JNOV. “The standard of review for a denial of a directed verdict, peremptory instruction, and a JNOV are identical.” Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003). All challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The Court reviews the trial court’s finding regarding the sufficiency of the evidence at the time the motion for a directed verdict or peremptory instruction is overruled. Holloman v. State, 656 So.2d 1134, 1142 (Miss.1995). Specifically, the standard of review that must be employed directs this court to affirm the lower court’s denial of a motion for directed verdict if, after accepting all the State’s evidence as true, along with all reasonable inferences therefrom, and disregarding all evidence that favors the defendant, said evidence supports a verdict of guilty beyond a reasonable doubt. Birkley v. State, 750 So.2d 1245(¶ 35) (Miss.1999). Furthermore, it is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶293) (Miss.1997).
¶ 5. Sanders’s intent to commit aggravated assault upon Mr. McDowell is the weakest link in the chains of guilt that bind Sanders, but we find that intent was sufficiently shown by the State. “If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of intent. The mind of an alleged offender, however, may be read from his acts, conduct, and inferences fairly deducible from all the circumstances.” Newburn v. State, 205 So.2d 260, 265 (Miss.1967) (citing 13 *95 Am.Jur.2d Burglary § 52 (196k) ). Finally, even “slim” evidence can be used to uphold a guilty verdict so long as it can reasonably be inferred to support such a finding. Blocker v. State, 809 So.2d 640(¶ 18) (Miss.2002) (citing Rainer v. State, 438 So.2d 290, 292 (Miss.1983)).
¶ 6. In Blocker, the defendant was convicted of murder and aggravated assault following a drive-by shooting and appealed same on the basis that the evidence presented was insufficient to carry the State’s burden, as well as other points of error. Blocker, 809 So.2d at (¶ 1). Blocker’s alleged accomplice, Madden, initially plead guilty to the crimes after the rifle used in the shooting was found in his possession, but he later recanted his plea and implicated Blocker. Id. at (¶ 3). Blocker’s alibi was that she was with her family at the time of the shooting and did not see Madden until he came to her house and asked if she would accompany him to Flora. Id. at (¶ 9). She claimed she never saw a gun, and that at no time did Madden speak of a shooting. Id. The supreme court upheld the jury’s verdict stating,
[i]n this situation, several facts were put before the jury that, if believed, would implicate Blocker in the fatal shooting. It is known that one of the alleged victims shot at Blocker the night before [the victims] were shot and that Blocker’s parents were prepared to hide her out of town. An eyewitness declared that the shooter was wearing a white shirt of some type and that the shooter’s hair was “slicked back.” Blocker’s father agreed with this description of Blocker on the night the crimes were committed.
Id. at (¶ 18). No eyewitness identified Blocker, other than Madden, who recanted his confession to place the blame with Blocker, and no physical evidence placed Blocker at the scene.
¶ 7. Turning to the case sub judice, the facts show that in the early morning of April 26th McDowell was assaulted and robbed. Despite the fact that McDowell did not see the person that rammed him prior to the time of the impact, when asked at trial who it was that rammed and robbed him, McDowell testified as follows:
Q. Mr. McDowell, is there any question in your mind whatsoever who rammed your vehicle on April the 26th, 2004?
A. No, not at all.
Q. And who was that?
A. Bear.
Q. All right. Is there any doubt in your mind as to who it was that robbed you at gunpoint on April the 26th, 2004?
A. No doubt at all.
Q. And who was that?
A. Bear.
Q. And is he the same man that you have identified here in court today?
A. Yes, he is.
¶ 8. At some point after the collision, the Greenville Police Department received a call from Byers[2] that a person was shot near the 300 block of South Sixth Street. The first responder, Officer Benjamin Roberson, testified that when he arrived at the scene of the incident he realized that no one was shot, but an aggravated assault and robbery may have occurred. Also, Officer Roberson testified, without objection, that Sanders was identified as the rammer and robber by McDowell and Byers. Thus, Sanders was identified as the suspect from the outset of the investigation. This information was relayed to Investigator Misty Litton when she ar *96 rived on the scene roughly an hour after the incident. Her investigation led her to the conclusion that Sanders came out of a vacant lot and hit McDowell causing his vehicle to rotate 180 degrees, finally coming to rest facing the opposite direction than he was initially traveling.
¶ 9. During Litton’s investigation she discovered a rim cover from the defendant’s truck at the scene of the accident, a piece of nylon from the undercarriage of the defendant’s truck at the entrance of the vacant lot, and an expended shell casing, which, from the photos in evidence, appears to be consistent with a round used in a M-16 assault rifle. Then, while at the scene of the crimes, Litton learned that the damaged S-10 truck had been found in a vacant lot immediately adjacent to the home of Sanders’s grandmother, Georgia Lee, who shared her residence with Sanders. She later learned that the truck was registered to Lee. Fresh tire tracks led to the maroon and grey truck and Litton noticed the front driver’s side quarter panel and tire were heavily damaged. After discovering the damage to the truck, and finding no one at Lee’s home, Litton had the truck towed in. Later that morning, Litton contacted Lee and informed her of the truck’s whereabouts and asked about the vehicle’s keys. Lee claimed that she had no keys to the truck, and it could be cranked with a screwdriver. Additionally, Lee stated that Sanders often drove the truck.
¶ 10. Later that same day, Sanders contacted Litton and admitted he was driving the truck that morning and had been in an accident. When he was asked about the incident he told Litton that he was in “just an accident” at the corner of Sixth and Sterling Streets. When Litton and Sanders visited the proposed site of his “accident” she could find no signs or other evidence at the corner of Sixth and Starling that an accident occurred. In contrast, she found broken glass, pieces of McDowell’s car, the defendant’s rim cover, and the piece of nylon from the defendant’s car at the scene of the actual “accident,” roughly 100 feet away from Sanders’s claimed accident site. When asked at trial if the incident had been an accident she responded, “Not from my investigation. I concluded that there was — there was an intentional ramming of the car which is categorized as aggravated assault, and there was an armed robbery.”
¶ 11. From this evidence, the jury was left with the uncontradicted facts that Sanders lied about where the accident that damaged his truck occurred, shots were fired at the time of the ramming, a shell casing was found, physical evidence placed Sanders’s truck at the scene of the accident as well as leaving the vacant lot, Sanders’s truck hit McDowell with enough force to rotate it 180 degrees, and Sanders was identified as the individual that rammed and robbed McDowell by Byers and the victim. As is evident from their verdict, the jury found the evidence sufficient to show the required intent.
¶ 12. It is true, as the dissent points out, that McDowell never saw the person driving the truck that hit him and never saw the truck in the vacant lot before the accident. However, the fact that he never saw the driver or noticed the truck in the vacant lot is not fatal to a showing of intent. Sanders all but admitted that he hit McDowell’s car. He admitted to Litton that he was in an accident at the corner of Sixth and Sterling that same night, but no evidence of an accident was found at that location. In contrast, the rim cover places the truck at the scene of the aggravated assault. Additionally, the piece of nylon undercarriage Litton found in the vacant lot places the truck there as well. The jury could have easily, and properly, in *97 ferred from his statements and the above physical evidence that Sanders hit McDowell after exiting the vacant lot. The jury could have also properly inferred that from Bear’s patronage of The Meeting Place he knew McDowell would be carrying the club’s money, as well as a pistol, thus prompting Sanders’s command to McDowell during the robbery not to reach for his weapon. Those conclusions added to McDowell’s testimony that he heard shots close to the time of impact, which was corroborated by the initial police call being a shot person and the discovery of the shell casing, as well as the velocity in which Sanders must have been traveling as he exited the vacant lot and collided with McDowell’s car, causing it to face the opposite direction, are enough, given their specific arrangement in this case, for a jury to find Sanders guilty beyond a reasonable doubt of aggravated assault.
¶ 13. Therefore, as a fair — minded jury having accepted all the State’s evidence and all favorable inferences as true may well have properly concluded Bear was guilty of aggravated assault beyond a reasonable doubt, we must affirm.
¶ 14. The dissent comments on the jury’s failure to reach a verdict on count II despite sufficient evidence presented at trial. Given the facts surrounding the jury’s decision, no significance is attached to this discrepancy. The record is silent as to the numerical split of the jury; whether it was eleven to one for conviction or vice versa. Apparently from the record, this case was tried on an election day and the trial judge had promised the jurors that they would be discharged in time to vote at the polls. In the jury’s partial verdict where they reached a verdict of guilty on the aggravated assault count but were unable to agree on count II, it stated, “Several jurors have not yet voted and will have only one hour remaining in which to vote.” The jury began deliberations about 4:20 p.m. After bringing the jury out at 6:00 p.m., and after the jurors first partial verdict and comment, the trial judge returned the jury to the jury room after instructing them to decide whether further deliberations would produce a verdict on count II. Within ten minutes the jury indicated further deliberations were futile. The jurors had fifty minutes to get to the polls and vote. Under those circumstances, failure of the jury to reach a verdict is of no matter. In any event, the jury’s reasons for finding Sanders guilty of aggravated assault but not robbery are moot as the evidence presented at trial, all of which must be assumed as true, along with all reasonable inferences that can be taken from such evidence, show that the jury had more than enough proof before it to find Sanders guilty beyond a reasonable doubt of aggravated assault.
II. DID THE TRIAL COURT ERR IN DENYING SANDERS’S MOTION FOR A NEW TRIAL AS THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 15. In accordance with our findings above, we find that this issue is without merit.
¶ 16. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
MYERS, P.J., SOUTHWICK, IRVING, GRIFFIS, AND BARNES, JJ., CONCUR. LEE, P.J., DISSENTS
*98 WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., CHANDLER AND ISHEE, JJ.

. McDowell was forced to use the window as an exit due to the extensive damage done to the door as a result of the ramming.

. For reasons unknown to this Court, Byers did not testify at Sanders’s trial.