# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00529-COA

**DAVID LEE LACEY JR. A/K/A DAVID LACEY JR.**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT: 12/06/2018
TRIAL JUDGE: HON. CHARLES W. WRIGHT JR.
COURT FROM WHICH APPEALED: WAYNE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
BY: GEORGE HOLMES
LESLIE ROUSSELL
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY: KASSIE ANN COLEMAN
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 08/25/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1. On January 12, 2016, David Lacey was indicted for armed robbery (Count I) and capital murder (Count II) for the death of Gary Martin. Demarco Felps was indicted on the same charges and were tried together on the capital murder charge. Before Lacey's and Felps's trial, Count I and Count II were severed, and the case proceeded to trial in the Wayne County Circuit Court on Count II, the capital murder charge. The trial court denied Lacey's motion for directed verdict. The State requested a capital murder jury instruction and a lesser-included offense instruction of first degree murder for Lacey, and the trial court granted that

request. As to Felps, the State requested a capital murder jury instruction and a jury instruction of "armed robbery," and the trial court granted that request. The jury found Felps not guilty on all charges. However, the jury found Lacey guilty of first degree murder.[1] The trial court subsequently sentenced Lacey to life imprisonment. Lacey filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the court ultimately denied. Lacey appealed. Finding no error, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     On July 11, 2015, Martin was in an apartment complex parking lot trying to buy drugs. All parties refer to the apartment complex as The High Rise. Robert Warren, a local resident, testified at trial that he saw Martin around noon on July 11, 2015, at the High Rise and that Martin approached him to purchase drugs. Warren told Martin that he did not have any drugs, and Martin drove away in his truck. Warren also testified that he saw Martin's truck return to the High Rise parking lot on July 12, 2015, around 2:00 a.m. Warren stated that he heard two shots which seemed to come from the driver's side of Martin's truck. After the shots were fired, the truck moved forward and then in reverse, jumped a curb and hit a garbage bin and a parked car. From where Warren was standing at the time the shots were fired, he could not see anyone around Martin's truck. Warren called 911.

¶3.     Sidney Henderson, who was charged under the same indictment, testified at trial that he also saw Martin on July 12, 2015. Henderson testified that around 2:00 a.m., he heard that

---

[1] The State filed caused the entry of nolle prosequi for Lacey's armed robbery charge (Count I).

2

Martin had returned to the High Rise looking for drugs. When he approached Martin's truck, he saw people trying to sell Martin crack cocaine. Henderson testified that Martin did not want to buy any crack from them because he thought it was fake. Henderson also testified that he told Martin he could get him real crack, but he would need to go into the High Rise to get it. Henderson got in Martin's truck, and they drove to a different location in the High Rise parking lot. Henderson then exited the truck to get his crack while Martin remained in the truck.

¶4. When Henderson returned, Lacey was standing by the driver's side window of Martin's truck, and Felps was standing away from the truck. Henderson testified that he pushed Lacey away from Martin's truck to complete his drug sale but Martin was no longer interested. According to Henderson, Martin stated that "[Lacey and Felps had] been jacking him all day and night." Henderson testified that he asked Felps why they were "running the money off" and Felps said that they were just trying to "hit a lick." Henderson testified that while he was talking to Felps, he heard gunfire and saw Lacey standing beside the driver's side window of Martin's truck holding a gun pointed towards the ground. He also heard Lacey say, "[c]ome on with it." Henderson saw Martin's truck move forward and then backward, hitting a garbage bin and a parked vehicle. Henderson testified that he, Felps, and Lacey all fled the scene; however, Henderson returned to the police station the next day to give his statement to the authorities.

¶5. Geoff Paton, a Waynesboro police officer, was the first officer on the scene. He found Martin slumped over in the driver's seat of his truck with a one hundred dollar bill in

3

his hand and his wallet in his pocket. The truck was resting against a parked car and the engine was still running. Investigator Don Hopkins arrived on the scene shortly thereafter and concluded that the gunshot was fired from outside of the vehicle on the driver's side, went through the back of truck seat, into the back of the victim, and exited through the victim's chest. The bullet fell out of Martin's shirt when he was removed from the truck. A nine-millimeter shell casing was recovered from the bed of Martin's pickup truck as well as another one beside the right passenger side of the truck. Investigators recovered four useable latent prints from the crime scene.

¶6. The State called two expert witnesses from the Mississippi State Crime Lab. Lori Beall, a forensic scientist from the Mississippi Forensic Lab, testified that the shell casings and bullet found at the scene all came from the same gun; however, the gun was never recovered. Jamie Bush, an expert latent print examiner, testified that the print taken from the "inside front top" of the driver's window belonged to Lacey.

¶7. Lacey and Felps were charged with armed robbery (Count I) and capital murder (Count II).[2] Henderson was also charged with accessory after the fact to armed robbery and capital murder and as a habitual offender (Count III). This charge was later nolle prosequied. Chambers was investigated as the shooter early in the investigation but was charged in the indictment with accessory after the fact to armed robbery and capital murder

---

[2] In a confusing indictment, the State included four counts which involved four different defendants charged with different crimes instead of using separate indictments. While the entire indictment arguably arose from one transaction and occurrence as required by Mississippi Code Annotated section 99-7-2 (Rev. 2015) and Mississippi Rule of Criminal Procedure rule 14.2, the State severed the defendants and some charges for purposes of trial.

4

(Count IV).[3] Before trial, Henderson's and Chambers's charges were severed from Lacey's and Felps's charges. The State then severed Lacey's and Felps's two charges further and proceeded to trial against both Lacey and Felps only on Count II, the capital murder charge. At the end of the trial, the State asked for and received a lesser-included offense instruction of armed robbery as to Felps.[4] Further, at the end of trial, the State asked for and received a lesser-included offense instruction of first degree murder as to Lacey. Ultimately, the jury found Felps not guilty and found Lacey guilty of first degree murder. Lacey appealed.

## ANALYSIS

¶8.    Lacey raises four issues on appeal. Lacey first argues that the trial court made multiple errors regarding his jury instructions including: allowing the State to receive a lesser-included offense instruction on "first degree murder," failing to instruct the jury on the definition of "deliberate design," and failing to grant his request for a lesser-included offense instruction on manslaughter. Lacey also argues that the evidence was insufficient to support the jury's guilty verdict and that the verdict was against the overwhelming weight of the evidence. Further, Lacey argues that the trial court committed reversible error by limiting the two co-defendants to a total of twelve peremptory challenges during the jury selection process. Finally, Lacey argues that as a result of all of the alleged errors committed, even if not reversible error on their own, violated his constitutional right to a fair trial.

---

[3] The record is unclear as to the status of the resolution of Chamber's charge. Chambers was not called as a witness by either side during Lacey's and Felps' trial.

[4] Felps was originally indicted for this charge in Count I of the indictment. Instead of trying Felps on that charge, the State elected to proceed on Count II, capital murder, but asked for a jury instruction of a lesser-included armed robbery charge.

5

## I. Jury Instructions

¶9. It is well settled that the standard of review for the giving or refusal of jury instructions is an abuse of discretion. *Taylor v. State*, 109 So. 3d 589, 595 (¶18) (Miss. Ct. App. 2013) (citing *Victory v. State*, 83 So. 3d 370, 373 (¶12) (Miss. 2012)). "When reviewing the giving or refusal of jury instructions, we do not view the jury instructions in isolation, but instead we consider them as a whole." *Id.* (citing *Rushing v. State*, 911 So. 2d 526, 537 (¶24) (Miss. 2005)).

### A. First-degree Murder Instruction

¶10. Lacey alleges that the trial court erred when it allowed the State to receive a lesser-included offense instruction of first-degree murder. The jury instruction as given, instructed the jury:

> Should the state fail to prove any one or more of these essential elements beyond a reasonable doubt, then you shall find said defendant not guilty of capital murder in Count II, and you shall then continue your deliberations to determine whether said defendant is guilty of the lesser crime of murder.
>
> You are instructed, therefore, that should you find from the evidence in this case beyond a reasonable doubt that:
>
> 1. On or about July 12, 2015 in Wayne county, Mississippi,
> 2. the Defendant, David Lee Lacey, Jr., did willfully and unlawfully kill and murder Gary Wayne Martin, a human being, by shooting him with a firearm,
> 3. with deliberate design to effect death,
> 4. without authority of law,
> 5. And not in necessary self defense,
>
> then it is your sworn duty to find the Defendant guilty of first-degree murder in Count II.

It is uncontested, that first-degree murder, or deliberate design murder, is a lesser-included

6

offense of capital murder. Lacey's attorney objected to the proposed instruction and argued that there was no testimony presented at trial that would justify the "deliberate design" instruction.

¶11. Henderson testified at trial that he saw Lacey standing at the driver's side window of Martin's truck holding a pistol towards the ground. He also testified that he heard shots being fired and heard Lacey telling Martin to "come on with it." Lacey's fingerprint was recovered from the driver's side window of Martin's truck and corroborated the eye-witness, testimony. Further, Henderson testified that he saw Felps and Lacey flee the scene of the shooting. Finally, Henderson testified that Felps told him that he and Lacey were just trying to "hit a lick." As stated previously, Martin was found with a one hundred dollar bill in his hand and his wallet still in his pocket. The jury could certainly have determined Lacey formed the requisite intent to kill Martin with deliberate design to effect death and did not rob Martin since money was in his hand and his wallet was still in his pocket.

¶12. When determining the appropriateness of a lesser-included offense instruction, "a lesser-included instruction should be given where the evidence is such that a reasonable jury 'could find the defendant not guilty of the principal offense charged in the indictment, yet guilty of the lesser-included offense.'" *Bright v. State*, 986 So. 2d 1042, 1048 (¶21) (Miss. Ct. App. 2008) (quoting *Monroe v. State*. 515 So. 2d 860, 863 (Miss. 1987)). In *Cooper v. State*, 230 So. 3d 1071, 1080 (¶30) (Miss. Ct. App 2017), this Court stated, "As to Cooper's second point, **the Supreme Court has clearly and repeatedly upheld instructions that "deliberate design" may be formed 'but for an instant before the fatal act**.'" (Emphasis

7

added).  Given Henderson's testimony and the physical evidence presented, a reasonable juror could find Lacey guilty of the lesser-included offense of first-degree murder. Therefore, we find no abuse of discretion by the trial court.

### B.    Manslaughter Instruction

¶13.    Lacey also alleges that the trial court erred when it refused his proposed manslaughter jury instruction.  Lacey's attorney submitted jury instruction D-6 which stated in part, "The Court further instructs the Jury that if you find the Defendant guilty of manslaughter, the form of your verdict shall be as follows: 'We, the Jury, find the Defendant guilty of manslaughter.'"  Lacey's attorney never submitted an instruction including the elements of manslaughter.  After the trial court refused jury instruction D-6, counsel argued that there was as much evidence of manslaughter as there was first-degree murder. Although Lacey's attorney had not submitted a manslaughter elements instruction, he indicated to the trial court that he intended to do so.  The trial court refused jury instruction D-6, and Lacey's attorney did not pursue any additional manslaughter instructions.

¶14.    Lacey argues further on appeal that, "if there is evidence sufficient to instruct the jury as to deliberate design murder, then there is enough evidence to support instructing the jury as to manslaughter."  Henderson was the only person who testified at trial as to Lacey's actions during the time surrounding the shooting.  As previously stated, Henderson testified that he saw Lacey standing at Martin's truck window holding a gun, that he heard gun shots and heard Lacey say "come on with it," and that he then saw Lacey flee the scene.

¶15.    Manslaughter is defined as "The killing of a human being, without malice, in the heat

8

of passion, but in a cruel or unusual manner, or by the using of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Mississippi Code Annotated section 97-3-35 (Rev. 2014).

> A defendant is entitled to have jury instructions given which present his theory of the case, however, **this entitlement is limited** in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, **or is without foundation in the evidence**.

*Adams v. State*, 772 So. 2d 1010, 1016 (¶20) (Miss. 2000) (emphasis added) (quoting *Humphrey v. State*, 759 So. 2d 368, 380 (Miss. 2000)).

> [A] lesser included offense instruction should be granted unless the trial judge-and ultimately this Court-can say, taking the evidence in the light most favorable to the accused and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offence (and conversely not guilty of at least one essential element of the principal charge.)

*Id*. In this case, there was no evidence presented at trial that could substantiate a manslaughter instruction. Therefore, we find no abuse of discretion by the trial court judge in refusing the lesser-included offense instruction of manslaughter.

### C.   Deliberate Design Murder Instruction

¶16.   Lacey alleges that the trial court erred in failing to give a sua sponte jury instruction on the definition of "deliberate design." Further, Lacey argues that the court's failure to give the "deliberate design" definition instruction constituted reversible error.

¶17. Neither the State, nor Lacey's attorney offered a "deliberate design" definition jury instruction after the trial court allowed the first-degree murder jury instruction. In *Wilson v. State*, 936 So. 2d 357, 362-63 (¶13) (Miss. 2006), the Mississippi Supreme Court addressed

9

this exact issue. In *Wilson*, the defendant argued that the trial court committed reversible error in failing to give the jury an instruction on the definition of deliberate design when neither party requested the instruction. *Id*. The Supreme Court held, "This issue is procedurally barred because Wilson failed to present the instruction to the trial court." *Id*. at 363 (¶14). Further, the Court held that "A trial court is not required to sua sponte instruct the jury or suggest jury instructions in addition to what the parties tender. . . . It is not error when a trial court does not instruct the jury as to deliberate design, when the instruction was not presented by either party." *Id* (citing *Harris v. State* 861 So. 2d 1003, 1017 (Miss. 2003); *Blocker v. State*, 809 So. 2d 640, 646 (Miss. 2002)). Given the fact that neither party offered or requested a jury instruction on the definition of "deliberate design," we find no error by the trial court in failing to instruct the jury on the definition of "deliberate design." Further, we do not find that the trial court had any obligation to sua sponte instruct the jury on the definition of "deliberate design." *See id.* at 362-63 (¶14).

## II.    Sufficiency of Evidence

¶18.    Lacey's attorney made a motion for directed verdict at the close of the State's case and filed a motion for a JNOV after sentencing. Motions for directed verdict and judgment notwithstanding the verdict both challenge the sufficiency of evidence presented at trial and require the same standard of review for denial. *Jerningham v. State*, 910 So. 2d 748, 751 (¶6) (Miss. Ct. App. 2005). This Court reviews questions of sufficiency of evidence de novo. *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018). "A motion for directed verdict considers the sufficiency of the evidence presented in the opponent's case in chief, and asks

10

if the non-moving party carried the burden of going forward; if not, the motion should be granted." *Wal-Mart Stores, Inc. v. Littleton*, 822 So. 2d 1056, 1058 (¶7) (Miss. Ct. App. 2002) (citing *Johnson v. State*, 642 So. 2d 924, 927 (Miss. 1994)). "This Court will reverse the denial of a directed verdict only where reasonable and fair-minded jurors could only find for the moving party." *Id*.

> The standard of review is as follows: all evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Additionally, this Court is not at liberty to direct that the defendant be found not guilty unless viewed in the light most favorable to the verdict no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.

*Id*. "Under this review, the central issue is "whether the evidence shows 'beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test is insufficient to support a conviction.'" *Singleton v. State*, 948 So. 2d 465, 472 (¶16) (Miss. Ct. App. 2007) (citing *Flora v. State*, 925 So. 2d 797 (¶82) (Miss. 2006)). "Weight and credibility are matters for the jury to resolve. And on appeal, we do not sift through conflicting evidence and weigh alternative theories like a juror. Rather, our only task is to decide if a reasonable juror could not possibly have found the defendant guilty based on the evidence presented." *Moore v. State*, 160 So. 3d 728, 735 (¶32) (citing *Davis v. State*, 130 So. 3d 1141, 1150 (¶37) (Miss. Ct. App. 2013)).

¶19. Lacey argues that the evidence presented by the State at trial did not support the jury's guilty verdict of first-degree murder. More specifically, Lacey argues that Henderson's

testimony is both unreliable and inconsistent with the physical evidence and Warren's testimony at trial. Lacey challenges the credibility of Henderson's testimony based on his criminal history, his charges in the indictment surrounding Martin's death, and the agreement that he had with the State in return for his testimony against Lacey. Lacey further points out discrepancies and flaws in Henderson's testimony as follows: (1) Henderson testified that he heard three or four shots and the police found only two spent shell casings, (2) Henderson testified that Lacey was at Martin's driver's side window when the shots were fired; however, Warren did not see anyone beside the truck before he called 911, (3) Henderson's inconsistencies about the movement of Martin's truck after the shots were fired, and (4) Henderson's testimony considering the timing and explanation of the meaning of Lacey's statement "come on with it."

¶20.    The jury was aware of Henderson's criminal history, his alleged involvement in this case, his agreement with the State to have his charges dismissed, and the alleged inconsistencies in his testimony. Henderson's testimony put Lacey at the door of Martin's vehicle at the time shots were fired and Henderson's testimony was corroborated by the fingerprint taken from inside Martin's truck. Hendrson's testimony put a gun in Lacey's hands immediately after shots were fired. Henderson's testimony had Lacey involved in the potential drug transaction stating "come on with it" and fled from the scene after the shooting.

¶21.    Given the physical evidence at trial, including Lacey's prints, recovered from Martin's truck and, Henderson's testimony recounting what he observed at the time of Martin's death,

a reasonable juror could have found the defendant guilty of the crime charged. Therefore we find no error in the trial court's denial of Lacey's motion for directed verdict and motion for JNOV.

### III.    Overwhelming Weight of the Evidence

¶22.    Lacey also filed within his post trial motions, a motion for new trial. It is the responsibility of this Court to determine whether or not the trial court abused its discretion in denying Lacey's motion for new trial. *Daniels v. State*, 107 So. 3d 961, 963 (¶12) (Miss. 2013). "A motion for new trial falls within a lower standard of review than does that of a judgment notwithstanding the verdict or a directed verdict. A motion for a new trial simply challenges the weight of the evidence." *Id*. In *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017), the Mississippi Supreme Court held that it is the sole responsibility of the jury to weigh the credibility of the witnesses and resolve conflicts in testimony; further, the appellate court "is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."

¶23.    The jury heard the witnesses, reviewed the evidence presented, and resolved for itself any conflicts in testimony and returned a verdict of guilty. In viewing all of the evidence in the "light most favorable to the verdict," we do not find that the jury's verdict was against the overwhelming weight of the evidence; nor do we find that the trial court abused its discretion in denying motion for new trial.

### IV.    Peremptory Challenges

13

¶24. Lacey argues on appeal that the trial court committed reversible error by failing to allow him two additional peremptory challenges. He further alleges that he was denied a fair and impartial jury as a result. During the jury selection process, the trial court stated that it would allow twelve peremptory challenges for the State and a total of twelve peremptory challenges for the defense, despite the fact that there were two defendants. Lacey's attorney objected to sharing twelve peremptory challenges with Felps. He argued that both Lacey and Felps should each be granted twelve peremptory challenges. The trial court overruled Lacey's objection and Lacey and Felps were not given any additional challenges. On appeal, Lacey argues that pursuant to Mississippi Rule of Criminal procedure Rule 18.3, Lacey and Felps should have each received two additional peremptory challenges. Mississippi Rule of Criminal Procedure 18.3 provides in part that "[w]hen two (2) or more defendants are jointly tried, two (2) additional challenges shall be allowed to the defense and to the prosecuting attorney for each additional defendant." Lacey claims that being limited to a total of twelve peremptory challenges for two defendants forced the defense to have to choose a "lesser of two evils approach" when choosing how to use its peremptory challenges.

¶25. The co-defendants only used nine of their twelve challenges. Further, Lacey made no assertions that the jury was unfair or impartial. Rather, he argues that he **might** have secured a more favorable jury if he had received additional peremptory challenges. It is important to note that at trial, Lacey's attorney asked for a total of 24 peremptory challenges to be split between the two defendants. Lacey's attorney did not cite to or object under Mississippi rules of Criminal Procedure Rule 18.3. That new argument first arose on appeal

14

to this Court.

¶26.    In *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993), the Mississippi Supreme

Court addressed differing grounds for objections on appeal and stated in part:

> An objection on one or more specific grounds constitutes a waiver of all other
> grounds. (objection cannot be enlarged in reviewing court to embrace omission
> not complained of at trial). Since Conner failed to object to the State's form-
> of-verdict instruction on grounds that it was incomplete, he is procedurally
> barred from raising the point here.

(Citations omitted).  "Our settled rule requires that, before an appellant may challenge a trial

court's refusal to excuse a juror for cause, he must show that he utilized all of his peremptory

challenges.  The reason for the rule is that the appellant has the power to cure substantially

any error so long as he has remaining unused peremptory challenges." *Hanson  v. State*, 592

So. 2d 114,129 (Miss. 1991).  Because Lacey failed to object to the number of peremptory

challenges at trial based on Mississippi Rule of Criminal Procedure 18.3, he is barred from

doing so on appeal. *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993)   Further, much

like *Hanson*, Lacey is complaining of an error in the use of peremptory challenges when, in

fact, he had not used all of the challenges he was allowed and potentially could have cured

any error he now alleges.  Therefore, Lacey's argument as to peremptory challenges is

without merit.

### IV.    Cumulative Error

¶27.    Lacey argues that the cumulative effect of the alleged errors at trial requires reversal.

"The cumulative error doctrine stems from the doctrine of harmless error . . . [which] holds

that individual errors, which are not reversible in themselves, may combine with other errors

to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007) (quoting *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007)). Because there were no errors by the trial court which would require reversal, this issue is without merit.

## CONCLUSION

¶28. After review, we find no abuse of discretion in the trial court's granting of the State's request for a lesser-included offense jury instruction of first-degree murder. Nor do we find abuse of discretion in the trial court's refusal of Lacey's request for a lesser-included offense jury instruction of manslaughter. Further, we find no error in the trial court's decision not to offer a sua sponte jury instruction on the definition of deliberate design. We also find that there was sufficient evidence to support the jury verdict and that the verdict was not against the overwhelming weight of the evidence. Because Lacey waived his objection to his peremptory challenges at the trial level, he is barred from doing so on appeal. Finally, because we find no errors by the trial court which would require reversal, Lacey's argument of cumulative error is without merit.

¶29. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR.**